IN THE

# UNITED STATES DISTRICT COURT
### FOR THE
## WESTERN DISTRICT OF WISCONSIN

Nathan M. Poke,

     Plaintiff,

      v.                             Case No. 19-cv-33

The City of La Crosse, Wisconsin,
and Ron Tischer, Chief of Police,

     Defendants.

# Plaintiff's Brief
# In Opposition To Defendants' Motion
# For Protective Order

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar Number 1016284
131 West Wilson Street, Suite 1200
Madison, WI  53703-3225
Phone:       608 283-6001
Fax:          608 283 0945
Email:       jsolson@scofflaw.com

# Table of Contents

Table of Contents ............................................................................................................. i

Statement of the Case ..................................................................................................... 1

Relevant Federal Rules .................................................................................................. 2

Argument ......................................................................................................................... 4

   I.    The motion must be denied because the Defendants have ignored the
   requirement that they confer with opposing counsel to attempt to resolve the dispute
   before asking the court to step in ......................................................................................... 4

   II.   The motion would have to be denied on its merits in any event .............................. 5

     A.   Courts have allowed broad discovery of emails. ................................................... 5

     B.   Elements of the discovery requests and the Defendants' arguments. .............. 7

       1.   The requested admission and the interrogatories. ........................................... 7

       2.   The email requests. ............................................................................................... 8

Conclusion: Where to Go From Here ......................................................................... 12

**Statement of the Case**

This race discrimination action was filed on January 20, 2019, by Nathan Poke, a black former La Crosse, Wisconsin, police officer, against the City of La Crosse and its police chief, Ron Tischer.  Officer Poke alleged that he had been unlawfully discriminated against on the basis of his race "when he was placed on leave and relieved of his most significant duties, and then investigated and constructively discharged from his employment."  (Dkt. # 1, ¶¶ 501, 502, 503.) The Defendants waived service (dkt. # 3) and filed an Answer (dkt. # 5) in which they disingenuously denied knowledge of even the most basic facts of Officer Poke's difficulties with the La Crosse police department.[1]

In an effort to secure an agreement on some of the basic facts of the history of Officer Poke's difficulties with, and eventual departure from, the department, the

---

[1] For example, paragraph 4107 of the Complaint (dkt. # 1) alleged:

> On September 18, 2015, Poke had a meeting with Attorney Nancy Pirkey, a lawyer hired by the City, that had been set up by the Human Resources Department and the Mayor's Office.

The Defendants answered, as they did to almost all of the other allegations of the Complaint:

> Answering paragraph 4707, these answering Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations contained therein; therefore, these answering Defendants deny the same putting the Plaintiff to his proof.

(Defendants' Answer and Affirmative Defenses, dkt. # 5, ¶ 4107.)

Plaintiff propounded a set of requests for admissions that essentially mirrored the allegations of the complaint. (Dkt. # 11-5.)

Then the Plaintiff submitted a second set of discovery requests, focused on securing the production of emails. The Defendants have moved for a protective order excusing them from responding to this discovery to any extent whatsoever.

## Relevant Federal Rules

Rule 26(c) of the Federal Rules of Civil Procedure provides:

(c) Protective Orders.

(1) In General. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

(2) Ordering Discovery. If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.

(3) Awarding Expenses. Rule 37(a)(5) applies to the award of expenses.

Rule 37(a)(5) provides:

(5) Payment of Expenses; Protective Orders.

*(A) If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing)*. If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

3

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

*(B) If the Motion Is Denied.* If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

*(C) If the Motion Is Granted in Part and Denied in Part.* If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

## Argument

**I.    The motion must be denied because the Defendants have ignored the requirement that they confer with opposing counsel to attempt to resolve the dispute before asking the court to step in.**

Rule 26(c)(1) provides that a motion for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." The instant motion does not include such a certification, and there has been no attempt at informal resolution.[2] (Declaration of Jeff Scott Olson, ¶ The Court should deny the

---

[2] It is curious that the Defendants have ignored this requirement, as they quote the rule in their brief. (Dkt. # 10, at 7-8.)

4

motion on this basis alone. Courts in this circuit take this rule seriously and deny

motions for protective orders based on noncompliance with the consultation

requirement alone. *Ossola v. Am. Express Co.*, No. 13 C 4836, 2015 WL 993379, at \*2 (N.D.

Ill. Mar. 2, 2015)("Since neither motion satisfies the requirements of Rule 26 or Local

Rule 37.2, both motions are denied without prejudice.")

Moreover, because the making of such a motion for protective order without an

attempt at informal resolution can never be "substantially justified" within the meaning

of Rule 37(A)(5)(B), the Court must order the Defendants or their attorneys or both  "to

pay the party or deponent who opposed the motion its reasonable expenses incurred in

opposing the motion, including attorney's fees." Rule 37(a)(5)(B) Fed R. Civ. Pro.  The

Court should award the undersigned fees at his regular hourly rate of $675 for 3.5 hours

of his time, totaling $2,362.50.  (Declaration of Jeff Scott Olson, ¶ 3.)

## II.      The motion would have to be denied on its merits in any event.

### A.      Courts have allowed broad discovery of emails.

A court considering a request for an order limiting discovery must consider "'the

totality of the circumstances, weighing the value of the material sought against the

burden of providing it,' and taking into account society's interest in furthering 'the

truthseeking function' in the particular case before the court." *Patterson v. Avery*

*Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (quoting *Rowlin v. Alabama*, 200 F.R.D.

459, 461 (M.D. Ala. 2001)).

5

The requested emails are all open records, and police departments should be one of the most open of government agencies. In *Wood v. Breier*, 54 F.R.D. 7, 11-12 (E.D. Wis. 1972) the Eastern District held:

> That defendant's arguments may have merit, however, is not enough; rather, they must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action and of the federal rules of discovery meant to insure that no relevant fact remain hidden. What merit defendant's arguments have, they clearly lose in the balance. The danger of doing harm to the Milwaukee Police Department by allowing discovery of this file is not nearly so great as the harm that would surely result to the efficacy of our entire legal structure, including the Milwaukee Police Department, if a case such as this were won because the truth was hidden.

*Wood v. Breier*, 54 F.R.D. 7, at 10-14.

Courts have recognized the great potential value of discovery into emails.  See, e.g., *Fox Indus., Inc. v. Gurovich*, No. CV 03-5166TCP, 2004 WL 1896913, at *8 (E.D.N.Y. July 15, 2004), report and recommendation adopted, No. CV-03-5166, 2004 WL 2348365 (E.D.N.Y. Aug. 25, 2004)(recommending "a court-appointed forensic computer expert to examine and image the defendants' computers to allow the discovery of 'emails that may not be as "inconsequential" as [the Defendant] claims'"); *PSEG Power N.Y., Inc. v. Alberici Constructors, Inc.*, No. 1:05-CV-657(DNHRFT), 2007 WL 2687670, at *6 (N.D.N.Y. Sept. 7, 2007)("211,000 hard copies of records that included emails and attachments" produced); *Koosharem Corp. v. Spec Pers.*, LLC, No. CIVA 608-583-HFF-WMC, 2008 WL 4458864 (D.S.C. Sept. 29, 2008)(Plaintiffs' motion to compel discovery was granted to allow for forensic analysis on defendants' computers due to defendant's failure to

6

produce emails sent between its former vice-president and any former employees or customers of plaintiff, among other things).

### B.    Elements of the discovery requests and the Defendants' arguments.

#### 1.    The requested admission and the interrogatories.

The Defendants "request the Court enter an order to preclude the discovery sought by Plaintiff, Nathan M. Poke, in his Second Set of Written Discovery to Defendants," (dkt. # 10, at 11), but they make no arguments about anything but the email requests.  It hardly seems that they ought to be excused from responding to the single request for admission in this set of discovery requests, which simply asks the Defendants to admit that the documents they, themselves, have produced are "genuine and authentic" (dkt. # 10, at 6).

Nor does it seem that the two interrogatories in the Plaintiff's Second Set of Written Discovery, which relate exclusively to the single requested admission, are objectionable:

> 1.    Please identify the person(s) answering these interrogatories, giving your full name, current address and any other name by which you have been known.
>
> 2.    If your response to any of the following requests for admission is anything other than an unqualified admission, please set forth the basis for each denial and identify any and all documents, facts and witnesses that support your response.

(Dkt. # 10, 5.)

7

If the Defendants produce bogus documents in connection with their discovery

responses, it hardly seems inappropriate to ask them to offer a word of explanation.

## 2.    The email requests.

In the Plaintiff's Second Set of Written Discovery Requests, there are three

requests for documents:

1. Please provide all documents which you identified, to which you referred, or upon which you relied, in answering Plaintiff's interrogatories and requests for admission, above.

2. Please provide all emails and other electronic communications to or from any member of the La Crosse police department, human resources office, or Mayor's office, referencing the Plaintiff, from January 1, 2013, through December 31, 2016.

3. Please provide all emails and other electronic communications to or from any member of the La Crosse police department, human resources office, or Mayor's office, referencing the police officer Anthony Clark, from January 1, 2013, through December 31, 2016.

(Dkt. # 10, at 6.)

The meat of the Defendants' argument for being excused from producing any of

these documents, as set forth in their brief, is as follows:

To properly respond to Plaintiff's Second Set of Written Discovery to Defendants, defense counsel must review all fifty seven thousand, four hundred and seventeen (57,417) emails to determine whether any emails include privileged material such as attorney-client information, attorney work product, or private data of individuals other than Poke or Clark. A review of this magnitude would involve countless hours of attorney time at an enormous cost to the Defendants.

Defendants move the Court pursuant to Fed. R. Civ. P. 26(c)(1)(A) for an order to preclude the discovery sought by Plaintiff, Nathan M. Poke, in his Second Set of Written Discovery to Defendants, because the burden and

8

expense of the proposed discovery outweigh its likely benefit. In addition, most of Plaintiff's proposed discovery is not relevant to the issues in the case.

(Dkt. # 10, at 8-9.)

The Defendants' arguments of burden and relevance will be considered in order.

**Burden.**  57,417 sounds like a lot of emails, and it leads one to wonder how the members of the La Crosse Police Department got any police work done, what with sending, on average, 40 emails a day[3] referencing one or both of the Department's two black police officers.

This volume of emails does seem to suggest that it might be possible to devise a more narrowly-tailored request, but the Defendants do not suggest the parameters of such, except for their argument that the beginning and ending dates of the request fall outside the beginning and ending dates of violation of the Wisconsin Fair Employment Act alleged in theses officers' respective Equal Rights Division complaints.  That is the Defendants' relevance argument.

**Relevance.**  The Defendants point out that "Poke alleged in his Discrimination Complaint filed with the Equal Rights Division of the Wisconsin Department of Workforce Development that the alleged discrimination began on September 11, 2015 and ended August 10, 2016."  (Dkt. # 10, at 9.)  With respect to Clark, the Defendants say, "Plaintiff's document request includes a period that extends approximately one (1)

---

[3] Four years of emails is 1460 days. 57,417 emails ÷ 1460 days = 39.40 emails per day.

9

year, two (2) months and three (3) days after Clark left the department on October 28,
2015." (Dkt. # 10, at 10.)

With respect to emails from periods prior to the first date of discrimination
alleged in the Plaintiff's ERD complaint, the Defendants have not considered that a
complaint under the Wisconsin Fair Employment Act can only reach back 300 days
from the date of its filing. Wis. Stat. 111.39(1)(2015-2016). Mr. Poke's complaint was
filed on December 20, 2016, so the first date of discrimination alleged in it was already
outside the 300-day statute of limitations. But "the statute of limitations for Section
1981 employment discrimination claims is four years." *Dandy v. United Parcel Serv. Inc.*,
388 F.3d 263, 269 (7th Cir. 2004). And "Wisconsin's six-year personal rights statute of
limitations applies to § 1983 actions." *Gray v. Lacke*, 885 F.2d 399, 409 (7th Cir. 1989), so
the temporal scope of the case at bar is far greater than the scope of the ERD
proceeding.

Moreover, even events occurring outside the statute of limitations can be
relevant in a discrimination case:

> Prior acts of discrimination that fall outside the limitations period may be
> used as background evidence in support of a timely discrimination claim.
> [*Nat'l R.R. Passenger Corp. v.*] *Morgan*, 536 U.S. [101] at 113 [(2002)].[7]
> Therefore, the prior acts are not immaterial under Rule 12(f) and it is
> inappropriate to strike such allegations at the pleading stage. See
> *Anbudaiyan v. Ill. Dep't of Fin. & Prof'l Regulation*, No. 11 C 8893, 2012 WL
> 2525696, at *3 (N.D. Ill. June 29, 2012) (denying request to strike
> allegations regarding prior acts of harassment because conduct could be
> relevant in some way). See also *Tanner v. Simelton*, No. 14 C 1804, 2015 WL
> 1983045, at *3 (N.D. Ill. Apr. 30, 2015) (holding that striking allegations is
> inappropriate where a history of discriminatory actions, even if outside

10

the limitations period, may be relevant as background for later events or to show discriminatory animus); *Beard v. Don McCue Chevrolet, Inc.*, No. 9 C 4218, 2012 WL 2930121, at *3 (N.D. Ill. July 18, 2012) (finding that although some alleged misconduct is not actionable under Title VII and § 1981 statutes of limitations, the allegations are still relevant because time-barred prior acts can serve as background evidence); *Benjamin v. Ill. Dep't of Fin. & Prof'l Regulation*, 688 F. Supp. 2d 796, 801 (N.D. Ill. 2010) (denying motion to strike allegations outside the statute of limitations time period because they were relevant to other claims and provided background evidence for Title VII claim and therefore were not "redundant, immaterial, impertinent or scandalous").

---

[7] Morgan held that Title VII does not prevent a plaintiff from using time-barred acts as background evidence in support of a timely discrimination claim. Id. This principle is equally applicable to § 1981 discrimination claims. Smith v. Nike Retail Servs., Inc., 234 F.R.D. 648, 658 (N.D. Ill. 2006); see also Wilbern v. Culver Franchising Sys., Inc., No. 13 C 3269, 2015 WL 5722825, at *22 (N.D. Ill. Sept. 29, 2015) (applying Morgan to § 1981 claim).

*Seung-Whan Choi v. Bd. of Trustees of Univ. of Illinois*, No. 16 C 11627, 2017 WL 3278823, at

*7 (N.D. Ill. Aug. 2, 2017).

In the Plaintiff's case, he became a Neighborhood Response Officer in March,

2013.  (Complaint, dkt. # 1, ¶ 4006.)  Many of his troubles began when he was removed

from that position and made the subject of an investigation into his comportment as a

Neighborhood Response Officer. (Complaint, dkt. # 1, ¶ 4054.)  Emails relating to the

assignments and expectations communicated to Officer Poke while he was a

Neighborhood Response Officer may well prove central to any evaluation of whether

the allegations of his misconduct in that position were sincere, or a mere pretext for

discrimination.

Similarly, communications about the police department's black officers

transmitted only *after they were gone* would seem more likely to be candid sources of

evidence of bias that those transmitted while they were there. And events or communications occurring after a plaintiff's departure can be relevant in other ways. See, e.g., *Hennessy v. Univ. of Chicago*, 544 F. Supp. 2d 705, 709 (N.D. Ill. 2008)("Hennessy contends that although the University claims that Hennessy's employment was being terminated as part of a reduction in force plan, Hennessy's position was actually re-created after she was gone."); *Chivers v. Cent. Noble Cmty. Sch.*, 423 F. Supp. 2d 835, 849–50 (N.D. Ind. 2006)("Chivers contends that because Wellman did not give her any assurances that Gillespie would be terminated, she decided not to come back to school and requested that Wellman wait to confront Gillespie until after she was gone.")

## Conclusion: Where to Go From Here

The Court should deny the motion for protective order outright, without prejudice, for failure to abide by the consultation requirement.

The Court should order the Defendants to provide the requested discovery by a date certain, unless either 1) the parties reach an agreement limiting the scope of the requests, or 2) the Court enters a subsequent order, after a properly supported motion, limiting the scope of the requests. Rule 26(c)(2).

Finally, the Court should order the Defendants to pay the Plaintiff the costs and attorneys' fees incurred in responding to their improper motion. Rule 26(c)(3).

12

The most likely result of such an order will be the initiation of informal discussions by counsel for the Defendants.  There are lots of possibilities for productive compromises to emerge from such discussions.

For one thing, there may be ways to limit the scope of the request that do not run the risk of leaving smoking-gun evidence buried, but significantly limit the number of emails that will have to be produced. None of those ways are apparent to the undersigned, and they are apparently not obvious to defense counsel, either, or they would have been mentioned. But if a subset of the requested emails were produced, say, even just three months of emails, an examination of them might permit the parties to devise ways to eliminate whole classes of emails from the request.  For example, what if it were to be discovered that Officer Poke sent hundreds of emails each year to individual school children full of the platitudes one might expect of a police officer? Out!  What if hundreds of citizens sent emails to Officer Clark every year on his birthday? Out!

These are just the wildest guesses, but one thing is fairly certain – if counsel for the parties were to start looking at actual emails, ways to limit the scope of the requests at issue would occur to them.  That is where the resolution of this dispute should have started, and that is where it will probably end.

Dated this Tuesday, June 25, 2019.

Respectfully submitted,

13

Nathan M. Poke,

Plaintiff

By

      THE JEFF SCOTT OLSON LAW FIRM, S.C.
      JEFF SCOTT OLSON
      State Bar Number 1016284
      131 West Wilson Street, Suite 1200
      Madison, WI 53703-3225
      Phone:      608 283-6001
      Fax:      608 283 0945
      Email:      jsolson@scofflaw.com


/s/    Jeff Scott Olson

_____

Jeff Scott Olson

ATTORNEYS FOR PLAINTIFF

### Certificate of Service

I hereby certify that on Tuesday, June 25, 2019, I electronically filed the foregoing with the

Clerk of the Court using the ECF system which will send notification of such filing to the

following: Christopher P. Riordan, and I hereby certify that I have mailed by United States

Postal Service the document to the following non ECF participants: none.

                                 /s/ Jeff Scott Olson_____

15