UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

NATHAN M. POKE,

      Plaintiff,

v.                                                                     Case No. 19-CV-33

CITY OF LA CROSSE, WISCONSIN and
RON TISCHER,

      Defendants.

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

      Defendants, City of La Crosse and Ronald Tischer, by their attorneys, von Briesen & Roper, s.c., move the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for Partial Summary Judgment with regard to Plaintiff's claim of a constructive discharge. In support of their Motion for Partial Summary Judgment, Defendants submit the following Memorandum in Support of Motion for Partial Summary Judgment.

## **INTRODUCTION**

      From August 23, 2011 through August 10, 2016, the City of La Crosse Police Department employed Nathan Poke ("Poke") as a police officer. Poke resigned from the police department on August 10, 2016. The terms and conditions of his resignation were memorialized in a written agreement with the City of La Crosse and the Wisconsin Professional Police Association entitled SEPARATION AGREEMENT, WAIVER AND RELEASE BETWEEN: CITY OF LA CROSSE, NATHAN POKE, AND WISCONSIN PROFESSIONAL POLICE ASSOCIATION ("Separation Agreement").

1

Months after executing the Separation Agreement, Poke filed a complaint with the Equal Rights Division of the Wisconsin Department of Workforce Development. In his ERD Complaint, Poke alleged the City of La Crosse discriminated against him based on "race" and his "voluntary resignation" pursuant to the Separation Agreement was a constructive discharge. Poke later dismissed his ERD action with prejudice prior to hearing.

More than two years after having executed the Separation Agreement, Poke filed this lawsuit with the United States District Court for the Western District of Wisconsin. Poke, in his lawsuit, alleged the City of La Crosse and Ronald Tischer[1] violated Title VII of the Civil Rights Act of 1964, the Equal Protection Clause of the Fourteenth Amendment, and 42 U.S.C. § 1981, by placing Poke on administrative leave, relieving him of significant job duties, and by initiating an investigation into his conduct. Poke also claimed "his resignation pursuant to this [Separation Agreement] was a constructive discharge, since [he] resigned only in order to avoid certain termination for alleged misconduct."

Defendants argue Poke's resignation was not a constructive discharge. Poke never faced certain discharge as the chief lacked the authority to unilaterally terminate Poke under Wis. Stat. § 62.13(5)(em), but instead had to file charges with the police and fire commission seeking Poke's termination. Before charges were filed by the chief, Poke resigned his position with the police department voluntarily rather than face disciplinary proceedings, which negates the constructive element of the claim. Further, as set forth in the Separation Agreement, Poke signed the agreement freely and voluntarily. Poke had counsel represent him during settlement negotiations. Because counsel represented Poke during settlement negotiations, absent a finding of fraud or duress, it is

---

[1] At all relevant times, Ronald Tischer was the Chief of Police for the City of La Crosse.

presumed Poke voluntarily and knowingly executed the Separation Agreement. Poke has not alleged fraud or duress as a reason for entering into the Separation Agreement.

Finally, a party cannot rescind a settlement agreement due to duress unless the consideration received for entering into the agreement is tendered to the party that paid the consideration. Poke has not returned the consideration received for entering into the Separation Agreement. Therefore, the Separation Agreement cannot be rescinded due to duress. For these many reasons, Defendants request the Court grant Defendants' Motion for Summary Judgment and dismiss Poke's claim of a constructive discharge.

## FACTS

Poke began as a police officer with the City of La Crosse Police Department on August 23, 2011. (PFF 5.) He resigned his position as a police officer with the City of La Crosse Police Department on August 10, 2016. (PFF 6.) The terms and conditions of Poke's resignation were memorialize in the written Separation Agreement. (PFF 3.) Poke entered into the Separation Agreement with the City of La Crosse and the Wisconsin Professional Police Association on August 10, 2016. (PFF 7.) Relevant sections of the Separation Agreement are set forth below:

### SEPARATION AGREEMENT, WAIVER AND RELEASE BETWEEN: CITY OF LA CROSSE, NATHAN POKE, AND WISCONSIN PROFESSIONAL POLICE ASSOCIATION

**THIS AGREEMENT** is made and is effective as of the date of execution (the "Effective Date") by and between the City of La Crosse (the "City"), the Wisconsin Professional Police Association (the "Association"), and Nathan Poke ("Employee").

**WHEREAS**, Employee has been employed by the City as a Police Officer;

**WHEREAS**, the City, the Association, and Employee desire, through this Agreement, to resolve claims between the parties related to Employee's employment with the City;

**WHEREAS**, the City has commenced a disciplinary investigation of certain alleged misconduct on the part of Employee, which investigation would, if continued, be likely to lead to disciplinary action in the form of Employee's discharge from employment;

**WHEREAS**, Employee desires, through this Agreement, to finalize his separation from employment with the City and accept the terms of this Agreement;

**NOW, THEREFORE**, the parties to this Agreement, in consideration of the mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, agree as follows:

1. **Separation Date and Payment.**  Employee shall remain on paid administrative leave until September 30, 2016. On or before September 30, 2016, Employee shall receive a payout of all accrued but unused paid leave time. In consideration of Employee's promises and obligations under this Agreement, Employee and the City agree the Employee's voluntary and irrevocable resignation is effective at the close of business on such date (the "Separation Date"). The City accepts Employee's resignation on that date. Employee shall receive no other payout for any paid time off remaining on the books.  Employee understands and agrees the City has no obligation to continue Employee's benefits or pay Employee's premiums for any other benefits beyond the Separation Date.  For purposes of state and federal insurance continuation laws, including COBRA, the Separation Date shall be considered the "Qualifying Event."  Employee acknowledges and agrees that he is entitled to no further payments or benefits, unless otherwise stated in this Agreement, and hereby waives any other rights to compensation or benefits from the City.

*     *     *

3. **Waiver and Release**.  In consideration of the City's obligations and promises under this Agreement, Employee does hereby fully and forever discharge and release the City, which includes all departments and agencies, and all of the foregoing's past and present employees, officials, agents, representatives, insurers, and attorneys (collectively, the "Released Parties"), from any and all actions, causes of action, claims, demands, damages (including but not limited to punitive damages), costs, expenses, attorneys' fees, and compensation on account of, or in any way growing out of any and all known and unknown damage resulting to or to result from any action by the Released Parties which arose on or before the date of Effective Date of this Agreement, except as specifically described below.

By way of example only and without in any way limiting the generality of the foregoing language, Employee's release shall include all claims for relief or causes of action under the collective bargaining agreement, the Americans With Disabilities Act of 1991, 42 U.S.C. § 12101 et seq.; the

Rehabilitation Act of 1973, as amended, 29 U.S.C. secs. 791, 793 and 794; the Genetic Information Nondiscrimination Act of 2008 – Public Law 110-233; the Age Discrimination in Employment Act; the Lilly Ledbetter Act, 42 U.S.C. 2000e-5; the Equal Pay Act, 29 U.S.C. 206; Employee Retirement Income Security Act of 1974, 29 U.S.C. sec. 1001, et seq.; the National Labor Relations Act; 29 U.S.C. sec 151, et seq.; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.; the Sherman Act, as amended, 15 U.S.C. §1 et seq.;, §15 U.S.C. §12 et seq.; the Wisconsin Fair Employment Laws, § 111.33, et seq.; the Wisconsin Family and Medical Leave Act, § 103.10, Wis. Stats., Wisconsin Statute Section 111.70; state and federal Whistleblower laws, and any other federal, state or local statute, ordinance, or regulation or public policy dealing in any respect with discrimination or separation of employment, including any claims alleging a violation of public policy, and, in addition, from all claims, demands, or actions brought on the basis of alleged wrongful or retaliatory discharge, breach of an oral or written contract, misrepresentation, defamation, interference with contract or intentional or negligent infliction of emotional distress, damage to business or professional reputation, conspiracy, negligence, invasion of privacy, or any other intentional tort or negligence claim or contract claim of any sort under the common law of any state or other jurisdiction.

This Section shall have no effect on and shall not apply to any claim by Employee pursuant to Wisconsin's worker's compensation laws or Wisconsin's unemployment compensation laws, or any claim to enforce this Agreement. Employee asserts, and the City denies, the existence of a legal claim based on discrimination against the Employee based on race. The parties further agree this paragraph shall not bar Employee from pursuing a legal claim alleging race discrimination against the City. In the event of such litigation, Employee agrees the Letter of Reference attached hereto as Appendix A may not be used or offered into evidence in such litigation.

4.    **Effect of Release**. Employee intends, in executing this Agreement, that it shall be effective as a bar to each and every claim, demand and cause of action described in Section 3. The City agrees, upon the Employee's execution of this document, to immediately terminate any and all disciplinary investigations and proceedings, and further agrees that it will make no effort to terminate the Employee's employment prior to the above Separation Date.

5.    **Advice of Legal Counsel**. Because this Agreement includes a waiver of certain rights under Title VII of the Civil Rights Act of 1964, the Wisconsin Fair Employment Act, and the other statutes and claims as referred to in Section 3, Employee is advised to consult an attorney before he signs this Agreement.

*       *       *

- 5 -

9.      **Association Acknowledgement**.      The Association signs this Agreement only as to the extent this Agreement discussed rights covered under the Collective Bargaining Agreement between the City and the Association, and any related state or federal laws enforcing the same. The Association's signature does not indicate any opinion by its representatives, agents, or employees regarding the rights Association member may have under any state, federal or local law prohibiting discrimination on the basis of any protected class, or which prohibited retaliation in any way related to the filing of such a claim. Neither the Association, or its representatives, agents, nor employees make any representation by their signature of Employee's rights under any such claim.

10.     **Duty of Fair Representation**.      Employee acknowledges that the Association has met its Duty of Fair Representation to him in that the Association has represented his interests fairly, impartially, and without discrimination.

11.     **Employee Acknowledgement**.      Employee further states and agrees that he has read this Agreement, that he has had the opportunity to have it fully explained to him by an non-Association attorney of his choice that he fully understands its final and binding effect, and that the only promises made to him to sign this Agreement are those stated in this Agreement, and that he is signing this Agreement freely and voluntarily.

12.     **Choice of Law, Severability, and Entire Contract.**      This Agreement shall be construed and enforced in accord with the laws of the State of Wisconsin. It constitutes the entire agreement between the parties as to issues provided for in this Agreement. Headings are for the convenience of the parties only and shall not affect the interpretation or application of this Agreement. This Agreement is the product of mutual negotiations, and no rules of strict construction shall be applicable against either party. If for any reason a court of competent jurisdiction finds a provision of this Agreement to be illegal or unenforceable, the offending provision will be deemed amended or deleted to the extent necessary to conform to applicable law. This Amendment may be executed in counterparts and shall be as effective as if executed on one document. Facsimile signatures shall be as effective and valid as original signatures. This Agreement shall only be valid and binding upon the signatures of all parties.

**IN WITNESS THEREFORE**, the undersigned state that they have carefully read the foregoing Agreement, know and understand its contents and sign the same under their own free will, being duly authorized to do so.

*        *        *

(PFF 4.)

On December 27, 2016, Poke filed a discrimination complaint with the Equal Rights Division of the Wisconsin Department of Workforce Development. (PFF 8.) In his ERD Complaint, Poke alleged the City of La Crosse discriminated against him based on "race" in violation of the Wisconsin Fair Employment Act, and his "voluntary resignation" pursuant to the Separation Agreement was a constructive discharge. (PFF 9, Section 3 and PFF 10, Section 5, ¶ 5.) In the Statement of Discrimination that accompanied his ERD Complaint, Poke wrote:

> I was a member of the La Crosse, Wisconsin, Police Department, since 2011.  I was one of approximately two African-American officers on the force.  In 2015, I was assigned as a Neighborhood Resource Officer (NRO), which was a desirable job for me.  I was assigned to the same squad care as Officer Dan Ulrich, who is white.
>
> In 2015, I began to notice a pattern of misconduct on the part of Officer Ulrich, and I became concerned that, if I did not report it, I, myself, might be in serious trouble.  So I made an oral report to my direct supervisor (Sgt. Andy Dittman, the acting Sgt. of the Vice Unit and the NRO unit).
>
> As a result of my report, the La Crosse Police Department commenced an investigation of Officer Ulrich, but the Department also commenced an investigation of me.  Moreover, I was placed on Administrative Leave while Officer Ulrich was not.
>
> In the spring of 2016, the investigation of me had progressed to a point that it was clear to me the City would be seeking my termination, albeit for some rather petty alleged misconduct.  Because I did not believe that there was any chance to preserve my employment and reputation by opposing the City's efforts to fire me through available channels, I authorized my union and my attorney to negotiate for the most favorable terms of resignation they could.
>
> On August 10 and 11, 2016, respectively, the City's representative and I signed an agreement that effected the termination of my employment with the City of La Crosse.  I allege that my "voluntary resignation" pursuant to this agreement was a constructive discharge, since I resigned only in order to avoid my certain termination for alleged misconduct.

(PFF 10, Section 5.)

Poke filed a Request to Withdraw Complaint with the Equal Rights Division of the Wisconsin Department of Workforce Development on September 10, 2018. (PFF 11.)

Administrative Law Judge, Laura J. Amundson, in an Order dated September 20, 2018, dismissed Poke's ERD case with prejudice (PFF 12.) On October 17, 2018, the United States Equal Employment Opportunity Commission issued to Poke "A Notice of Right to Sue" letter. (PFF 13.)

Plaintiff filed this lawsuit with the United States District Court for the Western District of Wisconsin on January 14, 2019. (Docket No. 1.) In his federal court complaint, Poke alleged the City of La Crosse violated his "right to be free from discrimination in the terms and conditions of employment on the basis of race and color secured … by Title VII of the Civil Rights Act of 1964 when he was placed on leave and relieved of his most significant duties, and then investigated and constructively discharged from his employment." (Docket No. 1, ¶¶ 166 and 501.) In addition, Poke claimed Chief Tischer violated rights secured by "the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States to be free from discrimination in employment on the basis of race and color [by placing Poke on administrative leave, relieving him of significant job duties, and by initiating an investigation into his conduct.]  (Docket No. 1, ¶¶ 166 and 502.)

Poke also claimed that Chief Tischer violated rights secured "by 42 U.S.C. § 1981 to be free from discrimination in his employment on the basis of race when [Poke was placed on administrative leave, relieved of significant job duties, made the subject of an investigation] and constructively discharged from his employment." (Docket No. 1, ¶¶ 166 and 503.) (Emphasis in original).

## SUMMARY JUDGMENT STANDARD

Summary judgment *shall* be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett,*

477 U.S. 317, 324 (1986); and *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011).

A party facing summary judgment "cannot sit back and simply poke holes in the moving party's summary judgment motion," but must "affirmatively set forth specific facts showing that there is a genuine issue of material fact." *Hong v. Children's Mem. Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993), *cert. denied*, 511 U.S. 1005 (1994) (internal citations and quotations omitted); *see also Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248 and citing *Celotex Corp.*, 477 U.S. at 324, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986), and *United States v. Rode Corp.*, 996 F.2d 174, 178 (7th Cir. 1993)).

Self-serving statements contained in affidavits "will not defeat a motion for summary judgment *when those statements are 'without factual support in the record.'" Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (emphasis in original). Moreover, conclusory assertions of discrimination cannot defeat a motion for summary judgment. *Cliff v. Bd. of School Com'rs of City of Indianapolis*, 42 F.3d 403, 412 (7th Cir. 1994).

Summary judgment "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mill v. First Fed. Sav. & Loan Assoc.*, 83 F.3d 833, 846 (7th Cir. 1996) (internal citations and quotations omitted).

## **ARGUMENT**

**1.     Poke's resignation pursuant to the Separation Agreement cannot be considered a constructive discharge, because he resigned his position as a police officer rather than face disciplinary charges.**

Constructive discharge is a "judicially-created concept that provides relief when 'working conditions were so intolerable that a reasonable person would have been compelled to resign'

*Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1005 (7th Cir. 1994)." *Gray v. Ameritech Corp.*, 937 F.Supp. 762, 767 (N.D.Ill. 1996).

Courts "generally have refused to find a constructive discharge where an employee had an avenue through which he could seek redress for the allegedly 'intolerable' work atmosphere leading up to his resignation, but failed to take advantage thereof. *See, e.g., Spence v. Md. Cas. Co.*, 995 F.2d 1147, 1157 (2d Cir. 1993) (no constructive discharge where plaintiff 'had a quite effective alternative to resignation. He could have lodged a complaint about [plaintiff's supervisor] to the Company's [Human Resources Division]'); *Mercury Air Group, Inc. v. Perez*, No. 00 CIV 2975, 2001 WL 88228, at *4 (S.D.N.Y. Jan 31, 2001) (court 'cannot conclude that [plaintiff] was forced out of his job' where plaintiff 'never attempted to bring what he apparently viewed to be a very serious problem to the attention of [defendant]'); *Rodriquez v. Graham-Windham Servs. To Families & Children*, No. 99 CIV 10447, 2001 WL 46985 at *6 (S.D.N.Y. Jan 18, 2001) (refusing to find constructive discharge where, *inter alia.* 'Rodriguez was on notice of G–W's Complaint Resolution Procedure, but made no complaint to G–W's Human Resources Department alleging discrimination or mistreatment'); *Katz v. Beth Israel Med. Ctr.,* No. 95 Civ. 7183, 2001 WL 11064, at *13 (S.D.N.Y. Jan. 4, 2001) (availability of grievance under collective bargaining agreement, among other things, defeated constructive discharge claim); *Stembridge v. City of N.Y.,* 88 F. Supp. 2d 276, 284-85 (S.D.N.Y. 2000) (no constructive discharge where '[P]laintiff had the opportunity to present his side of the story in the scheduled disciplinary hearing. It is impossible to know whether the hearing could have actually remedied the situation or address the ... misconduct because plaintiff chose not to participate in the process.'); *Cleveland v. Int'l Paper Co.*, No. 96 CV 1068, 1998 WL 690915, at *5 (N.D.N.Y. Sept. 20, 1998) ('no constructive discharge exists where an employee fails to lodge complaints or take advantage of employer

accommodations'); *Niles v. N.Y. Office of Mental Retardation & Dev. Disability*, No. 89-CV-598, 1996 WL 743839, at *10-11 (N.D.N.Y. Dec. 20, 1996)." *Silverman v. City of New York*, 216 F. Supp. 2d 108, 115-16 (E.D.N.Y. 2002).

Much like courts from other districts, the Seventh Circuit has been reluctant to find a constructive discharge where an employee felt compelled to resign because of intolerable working circumstances, but failed to avail themselves of available remedies. "In deciding whether an employee has been constructively discharged, [the Seventh Circuit] has adopted a test that focuses on the impact of the employer's actions on a reasonable person. *Id.* In *Brooms* we held that constructive discharge is established where 'a reasonable employee would have felt compelled to resign under the circumstances of th[e] case.' *Id.* at 423; *see also Bartman v. Allis-Chalmers Corp., 799 F.2d 311, 314 (7th Cir. 1986), cert. denied,* 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987) (finding constructive discharge where the unlawful conduct makes an employee's working conditions 'so intolerable that the employee is forced into an involuntary resignation.'). In *Brooms* we also cited with approval language from *Bailey v. Binyon*, 583 F.Supp. 923, 929 (N.D.Ill. 1984), noting that '[a]n employee must seek legal redress while remaining in his or her job unless confronted with an 'aggravated situation' beyond 'ordinary' discrimination." *Rodgers v. Western-Southern Life Ins.*, 12 F.3d 668, 677 (7th Cir. 1993).

Poke neither alleged nor testified that he resigned his job as a police officer for the City of La Crosse, because he confronted an "aggravated situation" beyond "ordinary" discrimination. Poke alleged in his Complaint "that his resignation pursuant to [the Separation Agreement] was a constructive discharge, since [he] resigned only in order to avoid [his] certain termination for alleged misconduct." (Document No. 1, ¶ 4142.)

Poke testified that his lawyer informed him Chief Tischer was going request his termination through a La Crosse Police and Fire Commission hearing for misconduct. Poke, instead, wanted to resolve his issues with the chief without going through a police and fire commission hearing. Poke offered the following testimony concerning his decision to resign:

Q      Okay. What made you think that you were going to be terminated from the La Crosse Police Department?

A      The chief requesting it.

Q      And when did the chief request your termination?

A      Through the union people.

Q      Okay.

A      I was told that he was -- he was going for – he was requesting the -- the police and fire commission to terminate me.

Q      Okay. He was requesting to have a hearing in front of the police and fire commission?

A      Correct.

(PFF 15, Riordan Aff., Ex. 1, p. 156:14 - 25.)

                          *         *         *

Q      Mr. Poke, I'm going to hand you what's been marked as Poke Exhibit 7. It's the separation agreement, waiver and release between the City of La Crosse, you and the Wisconsin Professional Police Association. Can you review that, please. Is Exhibit 7 the agreement you signed to resolve all of your claims against the City of La Crosse other than the one that you brought here today, or brought here in this particular instance?

A      When I decided to resign.

Q      This is the document you signed to resign?

A      Yes.

Q      Okay. And you've got your signature on page 4 of 6; is that correct?

A      Yes.

Q     And we were looking for a -- a date earlier; it looks like it was 8/10/16 that you signed?

A     Yes.

Q     Okay. And you reviewed this document prior to signing it?

A     Yes.

Q     Okay. We were talking about the chief commencing a fire and commission action against you, and you learning of that action through your union rep, correct?

A     Yes.

Q     And we were trying to figure out when you first learned about the chief bringing in a fire and commission -- fire and police commission action, obviously it was before you signed Exhibit 7, correct?

A     Correct.

Q     Do you remember when that occurred, when you first heard about the fire and police commission potential hearing?

A     About termination or the police and fire commission?

Q     The police and fire commission.

A     I was informed through my lawyer that they would be seeking termination, and then in order for them to do that, we would have to go through a police and fire commission hearing in order to get it granted.

(PFF 16, Riordan Aff., Ex. 1, p. 158:6 through p.159:23.)

*        *        *

Q     Okay. And when was the first time that you heard about the chief raising the police and fire commission issue as well as potential termination?

A     I was informed by my lawyer that the chief's lawyer stated that they would be seeking to fire me, and that they wanted to talk about – like mediate – like resolving it without having to do all that, and that it's in my best interest to not go through that proceeding. So the majority of the conversation was between the chief's lawyer, I don't remember his name, and – Andy Schauer, the union lawyer.

- 13 -

(PFF 17, Riordan Aff., Ex. 1, p. 160:3-14.)

Poke asserts he resigned in the face of certain termination, but this characterization cannot be true, because the chief lacked the authority to unilaterally terminate Poke under Wis. Stat. § 62.13(5)(em). The chief instead had to file charges with the police and fire commission seeking Poke's termination through an evidentiary disciplinary hearing—a step the chief never took and, even if he would have, the police and fire commission may have decided to impose discipline other than termination.

Poke never considered his job as a police officer for the City of La Crosse Police Department as his "forever" job. Poke testified "[t]hose guys know that I'm not from there, those guys know that I've been looking to get out of there and come back to the Cities basically since I got there, like they know I went down there to get experience to build a resume and come back, like -- that wasn't my forever job, ..." (PFF 21.)

Before his August 10, 2016 resignation, Poke sought jobs as a police officer with other police departments. He had received a job offer from the Richfield Police Department in May of 2015. (PFF 22.) On February 22, 2106, Poke emailed the City of Saint Paul, Minnesota, Department of Police enquiring about a position as a police officer with the City of Saint Paul Department of Police. (PFF 23.) The City of St. Paul Police Department presently employs Poke as a police officer. (PFF 24.)

The facts demonstrate Poke resigned before Chief Tischer brought disciplinary charges against him. The facts also demonstrate Poke resigned instead of presenting his complaints to the City of La Crosse Police and Fire Commission for review. A disciplinary charge or finding by the police and fire commission of termination for misconduct would have scuttled Poke's pursuit of job opportunities with police departments in the "Cities."

Poke did not resign because he was confronted with an "aggravated situation" beyond "ordinary" discrimination. Poke resigned to avoid a disciplinary charge and a potential finding of misconduct that would have derailed his pursuit of other job opportunities. As Poke failed to remain on the job and pursue available avenues for the redress of his complaints, his resignation pursuant to the Separation Agreement cannot be considered a constructive discharge.

2. **Poke's resignation pursuant to the Separation Agreement cannot be considered a constructive discharge, because he entered into the agreement knowingly and voluntarily.**

"It is well-settled principle in the law that compromises of disputes are favored. When such a compromise is put into writing as final settlement of a dispute, it will be upheld by the courts as written, if the intent of the parties is clearly disclosed in such agreement.' S*chilling v. Milwaukee Bedding Co.,* 197 Wis. 250, 221 N.W. 743, 746 (1928).'" *Empire Medical Review Services, Inc. v. CompuClaim, Inc.*, 326 F.Supp.3d 685, 695 (E.D. Wis. June 26, 2018). "[A] plaintiff who executes a release within the context of a settlement pursuant to the advice of independent counsel is presumed to have executed the document knowingly and voluntarily absent claims of fraud or duress." *Riley v. Am. Family Mut. Ins. Co.*, 881 F.2d 368, 373 (7th Cir. 1989).

In his Complaint, Poke stated "[because he] did not believe that there was any chance to preserve his employment and reputation by opposing the City's efforts to fire him through available channels, Mr. Poke authorized his union and his attorneys to negotiate for the most favorable terms of resignation they could secure." (Plaintiff's Complaint, ¶ 4140.) (Emphasis added). Poke acknowledged he "read [the Separation Agreement], that he has had the opportunity to have it fully explained to him by an non-Association attorney of his choice that he fully understands its final and binding effect, and that the only promises made to him to sign this Agreement are those stated

in this Agreement, and that he is signing this Agreement freely and voluntarily." (PFF 31, p. 4 of 6, ¶ 11.) (Emphasis added).

In addition, Poke testified once he learned that Chief Tischer was going to request his termination, he contacted the police union, obtained a union lawyer, and had his lawyer resolve the issue regarding his potential termination before the chief commenced an action with the fire and police commission. Poke testified as follows:

> Q       Okay. [Chief Tischer] was requesting to have a hearing in front of the police and fire commission?
>
> A       Correct.
>
> Q       Okay. And the chief had notified the union that this was going to occur?
>
> A       Well, when all this started happening, I contacted the union to try to get some help, so then I had like a union steward and like a union lawyer for -- starting the day that I met with Eileen Brownlee or whatever, Brown -- Brownlee.
>
> Q       Okay. Once she met with you regarding the interview that was recorded, you got ahold of the union?
>
> A       Correct. So then moving forward, any communication happened between the -- the police department and my union lawyer, and then me and my union lawyer went back and forth.

(PFF 25, Riordan Aff., Ex. 1, p. 156:14 through p.157:14.)

*     *     *

> Q       Okay. And when was the first time that you heard about the chief raising the police and fire commission issue as well as potential termination?
>
> A       I was informed by my lawyer that the chief's lawyer stated that they would be seeking to fire me, and that they wanted to talk about – like mediate – like resolving it without having to do all that, and that it's in my best interest to not go through that proceeding. So the majority of the conversation was between the chief's lawyer, I don't remember his name, and – Andy Schauer, the union lawyer.

(PFF 16, Riordan Aff., Ex. 1, p. 160:3-14 and Plaintiff's Complaint, ¶ 4140.)

Plaintiff has not claimed fraud or duress as a reason for entering into the Separation Agreement with the City of La Crosse and the Wisconsin Professional Police Association. Poke alleged in his Complaint "that his resignation pursuant to this agreement was a constructive discharge, since Mr. Poke resigned <u>only</u> in order to avoid certain termination for alleged misconduct." (Plaintiff's Complaint, ¶ 4142.) (Emphasis added.)

Poke acknowledged that he signed the Separation Agreement freely and voluntarily, after consulting with a non-association attorney:

> **<u>Employee Acknowledgement</u>**. <u>Employee further states and agrees that</u> he has read this Agreement, that <u>he has had the opportunity to have it fully explained to him by an non-Association attorney of his choice</u> that he fully understands its final and binding effect, and that the only promises made to him to sign this Agreement are those stated in this Agreement, <u>and that he is signing this Agreement freely and voluntarily</u>.

> (PFF 26, Riordan Aff., Ex. 2, p. 4 of 6, ¶ 11.) (Emphasis added).

In executing the Separation Agreement, Poke agreed his resignation from the police department was voluntary and irrevocable. Paragraph 1 of the Separation Agreement reads in part as follows:

> In consideration of [Nathan Poke's] promises and obligations under this Agreement, [Nathan Poke] and the [City of La Crosse] agree <u>[Nathan Poke's] voluntary and irrevocable resignation</u> is effective at the close of business on such date (the "Separation Date").

> (PFF 27, Riordan Aff., Ex. 2, p. 1 of 6, ¶ 1.) (Emphasis added).

The Separation Agreement represents the final and complete expression of the parties' agreement to settle claims. As evidenced by the language in the Separation Agreement, it was Poke's intention that his resignation from the City of La Crosse Police Department be voluntarily and irrevocable. His resignation was not the product of fraud or duress. As such, Poke's resignation

- 17 -

pursuant to the Separation Agreement cannot be considered a constructive discharge, because he entered into the agreement knowingly and voluntarily.

**3.      Poke did not tender back the consideration he received for entering into the Separation Agreement; therefore, the agreement cannot be rescinded because of duress.**

"A settlement agreement is a contract and therefore governed by the law applicable to contracts generally—that is, state law. *Laserage Technology Corp. v. Laserage Labs, Inc.*, 972 F.2d 799, 802 (7th Cir. 1992); *Am. Nat'l Prop. & Cas. Co. v. Nersesian*, 689 N.W.2d 922, 927 (Wis. Ct. App. 2004)." *HSBC Mortg. Servs., Inc. v. Daya*, No. 16-CV-80-JPS, 2016 WL 7156551, at *8 (E.D. Wis. Dec. 7, 2016)."

"[A] party seeking to avoid a contract based on duress must tender-back any consideration received in exchange." *American Airlines, Inc. v. Cardoza-Rodrigues*, 133 F.3d 111, 119 (1st Cir. 1998). *Lemke v. Waterloo Indus.*, No. 11-C-258, 2011 WL 443157, *1 (E.D. Wis. 2011). "The principle that a release can be rescinded only upon a tender of any consideration received is not a peculiarity of Illinois law; it is a general principle of contract law, Samuel Williston, 12 *Williston on Contracts* § 1460 (Walter H.E. Jaeger ed., 3d ed. 1970)." *Fleming v. United States Postal Serv. AMF O'Hare*, 27 F.3d 259, 260 (7th Cir. 1994).

Poke received a payout of all accrued but unused paid leave time as consideration for entering into the Separation Agreement. (PFF 18.) Poke has not tendered back to the City of La Crosse any of the consideration he received for entering into the written Separation Agreement. (PFF 16.) Therefore, the Separation Agreement cannot be voided or found unenforceable as the result of duress.

**4.      Wisconsin Statute § 807.05 makes the Separation Agreement binding and enforceable; therefore, Poke's his resignation pursuant to the agreement cannot be construed as a constructive discharge.**

"'Issues regarding the formation, construction, and enforceability of a settlement agreement are governed by local [i.e., state] contract law ....' *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000) (*citing Carr v. Runyan*, 89 F.3d 327 (7th Cir. 1996)). Under Wisconsin law, an agreement to settle claims pending before a court is not binding 'unless made in court ... and entered in the minutes or recorded by the reporter[ ] or made in writing and subscribed by the party to be bound thereby or the party's attorney.' Wis. Stat. § 807.05." *Fond du Lac Bumper Exch., Inc. v. Jul Li Enter. Co., Ltd.*, (E.D. Wisc. Aug. 8, 2017) 2017 WL 4457515, *5.[2] Whether a settlement agreement is binding and therefore enforceable is a question of law. *Waite v. Eason-White Creek Lions, Inc.*, 2006 WI App 19, ¶ 5, 289 Wis. 2d 100, 709 N.W.2d 88 (Ct. App. 2005).

Wisconsin Statute § 807.05 provides that a written agreement signed by a party or a party's attorney is binding and enforceable. Section 807.05 reads in full as follows:

> **807.05  Stipulations.**  No agreement, stipulation, or consent between the parties or their attorneys, in respect to the proceedings in an action or special proceeding shall be binding unless made in court and entered in the minutes or recorded by the reporter or made in writing and subscribed by the party to be bound thereby or the party's attorney.

Wis. Stat. § 807.05 (2017-18).

The Separation Agreement memorialized the terms and conditions of Poke's resignation. (PFF 3.) The agreement, which was signed by Poke (PFF 31, Riordan Aff., Ex. 1, p. 158:6 – 21), noted Poke agreed that his resignation was voluntary and irrevocable. (PFF, 2, p. 1 of 6, ¶ 1.) In addition, Poke's attorney, Andrew D. Schauer, signed the Separation Agreement. (PFF 20.) As the Separation Agreement was signed by both party and counsel, the agreement is enforceable

---

[2] Poke agreed the Separation Agreement "shall be construed and enforced in accord with the laws of the State of Wisconsin." (PFF 2, ¶ 12.)

pursuant to Wis. Stat. § 807.05, and Poke's resignation pursuant to the agreement was voluntary and cannot be construed as a constructive discharge.

**<u>CONCLUSION</u>**

As Poke's resignation from the City of La Crosse Police Department was voluntarily, as evidenced by the language of the Separation Agreement, his resignation is not an adverse employment action. Without having experienced an adverse employment action, Poke cannot support a constructive discharge claim. Therefore, this Court should grant Defendants' Motion for Summary Judgment with regard to Plaintiff's claim of a constructive discharge.

Dated this 30th day of August, 2019.

> von Briesen & Roper, s.c.
> *Attorneys for Defendants, City of La Crosse and Ronald Tischer*
>
> /s/ Christopher P. Riordan
> Christopher P. Riordan, SBN 1018825
> 411 East Wisconsin Ave. Suite 1000
> Milwaukee, WI 53202
> 414-287-1268
> 414-238-6635 – Facsimile
> criordan@vonbriesen.com

32948595_1