UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

NATHAN M. POKE,

      Plaintiff,

v.                                             Case No. 19-CV-33

CITY OF LA CROSSE, WISCONSIN and
RON TISCHER,

      Defendants.

## PROPOSED FINDINGS OF FACT IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants, City of La Crosse and Ron Tischer, by their attorneys, von Briesen & Roper, s.c., pursuant to Rule 56 of the Federal Rules of Civil Procedure, submit the following Proposed Findings of Fact in Support of Partial Motion for Summary Judgment.

## FINDINGS OF FACT

1.      The deposition of Nathan M. Poke was conducted on March 2, 2018. (Affidavit of Christopher P. Riordan, Ex. 1 - March 2, 2018 deposition of Nathan M. Poke (Riordan Aff., Ex. 1.)).

2.      The SEPARATION AGREEMENT, WAIVER AND RELEASE BETWEEN: CITY OF LA CROSSE, NATHAN POKE, AND WISCONSIN PROFESSIONAL POLICE ASSOCIATION was marked as Exhibit 7 at the March 2, 2018 deposition of Nathan M. Poke. (Riordan Aff., Ex. 1, p. 158:6-21.)

3.      The terms and conditions of Nathan M. Poke's resignation from the City of La Crosse Police Department were memorialized in a written agreement entitled SEPARATION

AGREEMENT, WAIVER AND RELEASE BETWEEN: CITY OF LA CROSSE, NATHAN POKE, AND WISCONSIN PROFESSIONAL POLICE ASSOCIATION. (Affidavit of Christopher P. Riordan, Ex. 2 – SEPARATION AGREEMENT, WAIVER AND RELEASE BETWEEN: CITY OF LA CROSSE, NATHAN POKE, AND WISCONSIN PROFESSIONAL POLICE ASSOCIATION ("Separation Agreement"). (Riordan Aff., Ex. 2 - Separation Agreement.)).

4.     Sections of the Separation Agreement are set forth below:

### SEPARATION AGREEMENT, WAIVER AND RELEASE BETWEEN: CITY OF LA CROSSE, NATHAN POKE, AND WISCONSIN PROFESSIONAL POLICE ASSOCIATION

**THIS AGREEMENT** is made and is effective as of the date of execution (the "Effective Date") by and between the City of La Crosse (the "City"), the Wisconsin Professional Police Association (the "Association"), and Nathan Poke ("Employee").

**WHEREAS**, Employee has been employed by the City as a Police Officer;

**WHEREAS**, the City, the Association, and Employee desire, through this Agreement, to resolve claims between the parties related to Employee's employment with the City;

**WHEREAS**, the City has commenced a disciplinary investigation of certain alleged misconduct on the part of Employee, which investigation would, if continued, be likely to lead to disciplinary action in the form of Employee's discharge from employment;

**WHEREAS**, Employee desires, through this Agreement, to finalize his separation from employment with the City and accept the terms of this Agreement;

**NOW, THEREFORE**, the parties to this Agreement, in consideration of the mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, agree as follows:

1.     **Separation Date and Payment.**  Employee shall remain on paid administrative leave until September 30, 2016.  On or before September 30, 2016, Employee shall receive a payout of all accrued but unused paid leave time. In consideration of Employee's promises and obligations under this Agreement, Employee and the City agree the Employee's voluntary and irrevocable resignation

is effective at the close of business on such date (the "Separation Date"). The City accepts Employee's resignation on that date. Employee shall receive no other payout for any paid time off remaining on the books. Employee understands and agrees the City has no obligation to continue Employee's benefits or pay Employee's premiums for any other benefits beyond the Separation Date. For purposes of state and federal insurance continuation laws, including COBRA, the Separation Date shall be considered the "Qualifying Event." Employee acknowledges and agrees that he is entitled to no further payments or benefits, unless otherwise stated in this Agreement, and hereby waives any other rights to compensation or benefits from the City.

*        *        *

3.      **Waiver and Release**.  In consideration of the City's obligations and promises under this Agreement, Employee does hereby fully and forever discharge and release the City, which includes all departments and agencies, and all of the foregoing's past and present employees, officials, agents, representatives, insurers, and attorneys (collectively, the "Released Parties"), from any and all actions, causes of action, claims, demands, damages (including but not limited to punitive damages), costs, expenses, attorneys' fees, and compensation on account of, or in any way growing out of any and all known and unknown damage resulting to or to result from any action by the Released Parties which arose on or before the date of Effective Date of this Agreement, except as specifically described below.

By way of example only and without in any way limiting the generality of the foregoing language, Employee's release shall include all claims for relief or causes of action under the collective bargaining agreement, the Americans With Disabilities Act of 1991, 42 U.S.C. § 12101 et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. secs. 791, 793 and 794; the Genetic Information Nondiscrimination Act of 2008 – Public Law 110-233; the Age Discrimination in Employment Act; the Lilly Ledbetter Act, 42 U.S.C. 2000e-5; the Equal Pay Act, 29 U.S.C. 206; Employee Retirement Income Security Act of 1974, 29 U.S.C. sec. 1001, et seq.; the National Labor Relations Act; 29 U.S.C. sec 151, et seq.; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.; the Sherman Act, as amended, 15 U.S.C. §1 et seq.; §15 U.S.C. §12 et seq.; the Wisconsin Fair Employment Laws, § 111.33, et seq.; the Wisconsin Family and Medical Leave Act, § 103.10, Wis. Stats., Wisconsin Statute Section 111.70; state and federal Whistleblower laws, and any other federal, state or local statute, ordinance, or regulation or public policy dealing in any respect with discrimination or separation of employment, including any claims alleging a violation of public policy, and, in addition, from all claims, demands, or actions brought on the basis of alleged wrongful or retaliatory discharge, breach of an oral or written contract, misrepresentation, defamation, interference with contract or intentional or negligent infliction of emotional distress, damage to business or professional reputation, conspiracy, negligence, invasion of privacy, or any other

3

intentional tort or negligence claim or contract claim of any sort under the common law of any state or other jurisdiction.

This Section shall have no effect on and shall not apply to any claim by Employee pursuant to Wisconsin's worker's compensation laws or Wisconsin's unemployment compensation laws, or any claim to enforce this Agreement. Employee asserts, and the City denies, the existence of a legal claim based on discrimination against the Employee based on race. The parties further agree this paragraph shall not bar Employee from pursuing a legal claim alleging race discrimination against the City.  In the event of such litigation, Employee agrees the Letter of Reference attached hereto as Appendix A may not be used or offered into evidence in such litigation.

4.     **Effect of Release**.  Employee intends, in executing this Agreement, that it shall be effective as a bar to each and every claim, demand and cause of action described in Section 3. The City agrees, upon the Employee's execution of this document, to immediately terminate any and all disciplinary investigations and proceedings, and further agrees that it will make no effort to terminate the Employee's employment prior to the above Separation Date.

5.     **Advice of Legal Counsel**.  Because this Agreement includes a waiver of certain rights under Title VII of the Civil Rights Act of 1964, the Wisconsin Fair Employment Act, and the other statutes and claims as referred to in Section 3, Employee is advised to consult an attorney before he signs this Agreement.

\*      \*      \*

9.     **Association Acknowledgement**.     The Association signs this Agreement only as to the extent this Agreement discussed rights covered under the Collective Bargaining Agreement between the City and the Association, and any related state or federal laws enforcing the same. The Association's signature does not indicate any opinion by its representatives, agents, or employees regarding the rights Association member may have under any state, federal or local law prohibiting discrimination on the basis of any protected class, or which prohibited retaliation in any way related to the filing of such a claim. Neither the Association, or its representatives, agents, nor employees make any representation by their signature of Employee's rights under any such claim.

10.    **Duty of Fair Representation**.     Employee acknowledges that the Association has met its Duty of Fair Representation to him in that the Association has represented his interests fairly, impartially, and without discrimination.

11.    **Employee Acknowledgement**.     Employee further states and agrees that he has read this Agreement, that he has had the opportunity to have it

4

fully explained to him by an non-Association attorney of his choice that he fully understands its final and binding effect, and that the only promises made to him to sign this Agreement are those stated in this Agreement, and that he is signing this Agreement freely and voluntarily.

12. **Choice of Law, Severability, and Entire Contract.** This Agreement shall be construed and enforced in accord with the laws of the State of Wisconsin. It constitutes the entire agreement between the parties as to issues provided for in this Agreement. Headings are for the convenience of the parties only and shall not affect the interpretation or application of this Agreement. This Agreement is the product of mutual negotiations, and no rules of strict construction shall be applicable against either party. If for any reason a court of competent jurisdiction finds a provision of this Agreement to be illegal or unenforceable, the offending provision will be deemed amended or deleted to the extent necessary to conform to applicable law. This Amendment may be executed in counterparts and shall be as effective as if executed on one document. Facsimile signatures shall be as effective and valid as original signatures. This Agreement shall only be valid and binding upon the signatures of all parties.

**IN WITNESS THEREFORE**, the undersigned state that they have carefully read the foregoing Agreement, know and understand its contents and sign the same under their own free will, being duly authorized to do so.

\*       \*       \*

(Riordan Aff., Ex. 1, p. 158:6-21, Exhibit 7.)

5. Nathan M. Poke began as a police officer with the City of La Crosse Police Department on August 23, 2011. (Riordan Aff., Ex. 1, p. 20:4-9.)

6. Nathan M. Poke resigned his position as a police officer with the City of La Crosse Police Department on August 10, 2016. (Riordan Aff., Ex. 2 - Separation Agreement, p. 1, ¶ 1.)).

7. Nathan M. Poke entered into SEPARATION AGREEMENT, WAIVER AND RELEASE BETWEEN: CITY OF LA CROSSE, NATHAN POKE, AND WISCONSIN PROFESSIONAL POLICE ASSOCIATION with the City of La Crosse and the Wisconsin Professional Police Association on August 10, 2016. (Riordan Aff., Ex. 1, p. 158:6-21, and Ex. 2 – Separation Agreement.)

8. Nathan M. Poke filed a discrimination complaint with the Equal Rights Division of

the Wisconsin Department of Workforce Development on December 27, 2016. (Affidavit of Christopher P. Riordan, Ex. 3 – Nathan M. Poke's December 27, 2016 Discrimination Complaint filed with the Equal Rights Division of the Wisconsin Department of Workforce Development marked as Exhibit 1 during the March 2, 2018 deposition of Nathan M. Poke. (Riordan Aff., Ex. 3.)

      9.      In his ERD Complaint, Poke alleged the City of La Crosse discriminated against him based on "race" in violation of the Wisconsin Fair Employment Act, and his "voluntary resignation" pursuant to the Separation Agreement was a constructive discharge. (Riordan Aff., Ex. 3, Sections 3 and 5.)

      10.     In the Statement of Discrimination that accompanied his ERD Complaint, Nathan M. Poke wrote:

> I was a member of the La Crosse, Wisconsin, Police Department, since 2011. I was one of approximately two African-American officers on the force. In 2015, I was assigned as a Neighborhood Resource Officer (NRO), which was a desirable job for me. I was assigned to the same squad care as Officer Dan Ulrich, who is white.
>
> In 2015, I began to notice a pattern of misconduct on the part of Officer Ulrich, and I became concerned that, if I did not report it, I, myself, might be in serious trouble. So I made an oral report to my direct supervisor (Sgt. Andy Dittman, the acting Sgt. of the Vice Unit and the NRO unit).
>
> As a result of my report, the La Crosse Police Department commenced an investigation of Officer Ulrich, but the Department also commenced an investigation of me. Moreover, I was placed on Administrative Leave while Officer Ulrich was not.
>
> In the spring of 2016, the investigation of me had progressed to a point that it was clear to me the City would be seeking my termination, albeit for some rather petty alleged misconduct. Because I did not believe that there was any chance to preserve my employment and reputation by opposing the City's efforts to fire me through available channels, I authorized my union and my attorney to negotiate for the most favorable terms of resignation they could.
>
> On August 10 and 11, 2016, respectively, the City's representative and I signed an agreement that effected the termination of my employment with the City of La

6

Crosse.  I allege that my "voluntary resignation" pursuant to this agreement was a constructive discharge, since I resigned only in order to avoid my certain termination for alleged misconduct.

(Riordan Aff., Ex. 3, Section 5.)

11.     Nathan M. Poke filed a Request to Withdraw Complaint with the Equal Rights Division of the Wisconsin Department of Workforce Development on September 10, 2018. (Affidavit of Christopher P. Riordan, Ex. 4 – Nathan M. Poke's September 10, 2018 Request to Withdraw Complaint filed with the Equal Rights Division of the Wisconsin Department of Workforce Development (Riordan Aff., Ex. 4.)

12.     Administrative Law Judge, Laura J. Amundson, by Order dated September 20, 2018, dismissed Nathan M. Poke's ERD case with prejudice. (Affidavit of Christopher P. Riordan, Ex. 5 – September 20, 2018 Order from Administrative Law Judge, Laura J. Amundson, in which Judge Amundson dismissed Nathan M. Poke's ERD with prejudice (Riordan Aff., Ex. 5.)

13.     The United States Equal Employment Opportunity Commission issued a Notice of Right to Sue letter to Nathan M. Poke on October 17, 2018. (Affidavit of Christopher P. Riordan, Ex. 6 – October 17, 2018 Notice of Right to Sue letter issued to Nathan M. Poke by the United States Equal Employment Opportunity Commission (Riordan Aff., Ex. 6.)

14.     In the spring of 2016, the investigation of Nathan M. Poke had progressed to a point that it was clear to Nathan M. Poke that the City would be seeking his termination. Because Nathan M. Poke did not believe that there was any chance to preserve his employment and reputation by opposing the City's efforts to fire him through available channels, he authorized his union and his attorney to negotiate for the most favorable terms of resignation they could. (Riordan Aff., Ex. 3, Section 5, ¶ 4.)

15.     Nathan M. Poke testified his lawyer informed him Chief Tischer was going

request his termination for misconduct through a La Crosse Police and Fire Commission hearing. (Riordan Aff., Ex. 1, p. 156:14 – 25 and p. 158:6 through p. 159:23.)

16.    Nathan M. Poke had his lawyer resolve the issue regarding his potential termination before Chief Tischer commenced an action with the City of La Crosse Police and Fire Comission. (Riordan Aff., Ex. 1, p. 160:3-14. and Plaintiff's Complaint, ¶ 4140.)

17.    Nathan M. Poke authorized his union and his attorneys to negotiate for the most favorable terms of resignation they could secure. (Riordan Aff., Ex. 1, p. 160:3 – 14, and Plaintiff's Complaint, ¶ 4140.)

18.    On August 10 and 11, 2016, respectively, the City's representative and Nathan M. Poke signed an agreement that effected the termination of his employment with the City of La Crosse. (Riordan Aff., Ex. 3, Section 5, ¶ 5.)

19.    Nathan M. Poke alleged his "voluntary resignation" pursuant to this agreement was a constructive discharge, since he resigned only in order to avoid my certain termination for alleged misconduct. (Riordan Aff., Ex. 3, Section 5, ¶ 5.)

20.    Nathan M. Poke's attorney, Andrew D. Schauer, signed the Separation Agreement on August 10, 2016. (Riordan Aff., Ex. 2 – Separation Agreement, p. 4 of 6.)

21.    Nathan M. Poke testified "[t]hose guys know that I'm not from there, those guys know that I've been looking to get out of there and come back to the Cities basically since I got there, like they know I went down there to get experience to build a resume and come back, like -- that wasn't my forever job, …" (Riordan Aff., Ex. 1, p. 197:14-21.)

22.    Before his August 10, 2016 resignation, Nathan M. Poke received a job offer from the Richfield Police Department in May of 2015. (Riordan Aff., Ex. 1, p. 165:23 through p. 166:6.)

23.    On February 22, 2106, Nathan M. Poke emailed the City of Saint Paul, Minnesota,

Department of Police enquiring about a position as a police officer with the City of Saint Paul Department of Police. (Affidavit of Christopher P. Riordan, Ex. 7 – February 22, 2018 email from Nathan Poke to *CI-StPaul_Jobs, Subject: Police Officer (Riordan Aff., Ex. 7.)

24.     The City of St. Paul Police Department presently employs Nathan M. Poke as a police officer. (Riordan Aff., Ex. 1, p. 15:13-14.)

25.     Once Nathan M. Poke learned that Chief Tischer was going to request his termination, he contacted the police union, and obtained a union lawyer. (Riordan Aff., Ex. 1, p. 156:14 through p.157:14.)

26.     In paragraph 11 of the Separation Agreement, Nathan M. Poke acknowledged that he signed the Separation Agreement freely and voluntarily, after consulting with a non-association attorney. (Riordan Aff., Ex. 3, p. 4 of 6, ¶ 11.)

27.     In executing the Separation Agreement, Poke agreed his resignation from the police department was voluntary and irrevocable. (Riordan Aff., Ex. 3, p. 1 of 6, ¶ 1.)

28.     Nathan M. Poke received a payout of all accrued but unused paid leave time as consideration for entering into the Separation Agreement. (Riordan Aff., Ex. 2 – Separation Agreement, p. 1, ¶ 1.)

29.     Nathan M. Poke has not tendered any of consideration received for entering into the Separation Agreement back to the City of La Crosse.

30.     Nathan M. Poke has not repudiated the Settlement Agreement.

31.     The Separation Agreement was signed by Poke (Riordan Aff., Ex. 1, p. 158:6 – 21.)

32.     Poke acknowledged he read the Separation Agreement, that he has had the opportunity to have it fully explained to him by an non-Association attorney of his choice that he fully understands its final and binding effect, and that the only promises made to him to sign this

9

Agreement are those stated in this Agreement, and that he is signing this Agreement freely and voluntarily. (Riordan Aff., Ex. 3, p. 4 of 6, ¶ 11.)

Dated this 30th day of August, 2019.

Respectfully submitted,

von Briesen & Roper, s.c.
*Attorneys for Defendants, City of La Crosse and Ronald Tischer*

*/s/ Christopher P. Riordan*
von BRIESEN & ROPER, s.c.
Christopher P. Riordan, SBN 1018825
411 East Wisconsin Ave. Suite 1000
Milwaukee, WI 53202
414-287-1268
414-238-6635 – Facsimile
criordan@vonbriesen.com

32961340_1