## SEPARATION AGREEMENT, WAIVER AND RELEASE BETWEEN: CITY OF LA CROSSE, NATHAN POKE, AND WISCONSIN PROFESSIONAL POLICE ASSOCIATION

**THIS AGREEMENT** is made and is effective as of the date of execution (the "Effective Date") by and between the City of La Crosse (the "City"), the Wisconsin Professional Police Association (the "Association"), and Nathan Poke ("Employee").

**WHEREAS**, Employee has been employed by the City as a Police Officer;

**WHEREAS**, the City, the Association, and Employee desire, through this Agreement, to resolve claims between the parties related to Employee's employment with the City;

**WHEREAS**, the City has commenced a disciplinary investigation of certain alleged misconduct on the part of Employee, which investigation would, if continued, be likely to lead to disciplinary action in the form of Employee's discharge from employment;

**WHEREAS**, Employee desires, through this Agreement, to finalize his separation from employment with the City and accept the terms of this Agreement.

**NOW, THEREFORE**, the parties to this Agreement, in consideration of the mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, agree as follows:

1. **Separation Date and Payment.** Employee shall remain on paid administrative leave until September 30, 2016. On or before September 30, 2016, Employee shall receive a payout of all accrued but unused paid leave time. In consideration of Employee's promises and obligations under this Agreement, Employee and the City agree the Employee's voluntary and irrevocable resignation is effective at the close of business on such date (the "Separation Date"). The City accepts Employee's resignation on that date. Employee understands and agrees the City has no obligation to continue Employee's benefits or pay Employee's premiums for any other benefits beyond the Separation Date. For purposes of state and federal insurance continuation laws, including COBRA, the Separation Date shall be considered the "Qualifying Event." Employee acknowledges and agrees that he is entitled to no further payments or benefits, unless otherwise stated in this Agreement, and hereby waives any other rights to compensation or benefits from the City.

2. **Unemployment Insurance.** For Unemployment Insurance purposes only, the parties agree that Employee's resignation is in lieu of discharge, but not for misconduct or substantial fault as it relates to a claim for Unemployment Insurance benefits. To this end, the City agrees that, unless compelled to do so by subpoena or court order, it shall not contest or otherwise appear at any hearing involving a request for Unemployment Insurance benefits made after the Separation Date. The City further agrees that all written and oral responses to inquiries from any applicable Unemployment Insurance agency pertaining to an application by Employee for Unemployment Insurance benefits made after the Separation Date will be consistent with this paragraph.

EXHIBIT 2

Poke
EXHIBIT 7
3-2-18 52
GRAMANN REPORTING, LTD.

3.  **Waiver and Release.** In consideration of the City's obligations and promises under this Agreement, Employee does hereby fully and forever discharge and release the City, which includes all departments and agencies, and all of the foregoing's past and present employees, officials, agents, representatives, insurers, and attorneys (collectively, the "Released Parties"), from any and all actions, causes of action, claims, demands, damages (including but not limited to punitive damages), costs, expenses, attorneys' fees, and compensation on account of, or in any way growing out of any and all known and unknown damage resulting to or to result from any action by the Released Parties which arose on or before the date of Effective Date of this Agreement, except as specifically described below.

    By way of example only and without in any way limiting the generality of the foregoing language, Employee's release shall include all claims for relief or causes of action under the collective bargaining agreement, the Americans With Disabilities Act of 1991, 42 U.S.C. § 12101 et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. secs. 791, 793 and 794; the Genetic Information Nondiscrimination Act of 2008 – Public Law 110-233; the Age Discrimination in Employment Act; the Lilly Ledbetter Act, 42 U.S.C. 2000e-5; the Equal Pay Act, 29 U.S.C. 206; Employee Retirement Income Security Act of 1974, 29 U.S.C. sec. 1001, et seq.; the National Labor Relations Act; 29 U.S.C. sec 151, et seq.; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.; the Sherman Act, as amended, 15 U.S.C. §1 et seq.;, §15 U.S.C. §12 et seq.; the Wisconsin Fair Employment Laws, § 111.33, et seq.; the Wisconsin Family and Medical Leave Act, § 103.10, Wis. Stats., Wisconsin Statute Section 111.70; state and federal Whistleblower laws, and any other federal, state or local statute, ordinance, or regulation or public policy dealing in any respect with discrimination or separation of employment, including any claims alleging a violation of public policy, and, in addition, from all claims, demands, or actions brought on the basis of alleged wrongful or retaliatory discharge, breach of an oral or written contract, misrepresentation, defamation, interference with contract or intentional or negligent infliction of emotional distress, damage to business or professional reputation, conspiracy, negligence, invasion of privacy, or any other intentional tort or negligence claim or contract claim of any sort under the common law of any state or other jurisdiction, except as exempted below in this Section.

    This Section shall have no effect on and shall not apply to any claim by Employee pursuant to Wisconsin's worker's compensation laws or Wisconsin's unemployment compensation laws, or any claim to enforce this Agreement. Employee asserts, and the City denies, the existence of a legal claim based on discrimination against the Employee based on race. The parties further agree this paragraph shall not bar Employee from pursuing any legal claim alleging race discrimination against the City. In the event of such litigation, Employee agrees the Letter of Reference attached hereto as Appendix A may not be used or offered into evidence in such litigation.

4. **Effect of the Release.** Employee intends, in executing this Agreement, that it shall be effective as a bar to each and every claim, demand and cause of action described in Section 3. The City agrees, upon the Employee's execution of this document, to immediately terminate any and all disciplinary investigations and proceedings, and further agrees that it will make no effort to terminate the Employee's employment prior to the above Separation Date.

5. **Advice to Consult Legal Counsel.** Because this Agreement includes a waiver of certain rights under Title VII of the Civil Rights Act of 1964, the Wisconsin Fair Employment Act, and the other statutes and claims as referred to in Section 3, Employee is advised to consult an attorney before he signs this Agreement.

6. **Employment References and Personnel File.** The City agrees to provide Employee with a letter of in the form of Appendix A attached to this Agreement. Employee agrees to direct all requests for references and other employment-related information to the City's Director of Human Resources, and the City (including the Chief and all employees of the Police Department) agrees to direct all requests for background checks of the Employee to the Director of Human Resources. For all employment references after the Separation Date, the Director of Human Resources will provide a letter in the form of Appendix A and any verbal reference will contain information in accordance with the information in Exhibit A. For all employment references before the Separation Date, the Director of Human Resources will provide a letter in the form of Appendix A, except that letter shall not state that the employee resigned from employment, but that instead he is still employed by the Department. In either event, the Chief shall provide no other information to the reference requester unless Employee authorizes release of further information in writing. Employee's personnel file shall contain only those documents contained therein on the Effective Date of this Agreement.

7. **No Admission of Liability.** The parties' participation in this Agreement is not to be construed as an admission of any wrongdoing or liability whatsoever by or on behalf of Employee, the Association or the Released Parties.

8. **Nonprecedent Setting and Waiver of Association Claims.** The parties agree this Agreement is the product and result of unique facts and circumstances. This Agreement shall not serve as a precedent for any party with regard to any other circumstances or claims. The Association agrees that it shall withdraw any pending grievances, with prejudice, and waives any right to file any grievance, prohibited practice claim or any other claims, grievances, lawsuits, or complaints related to Employee's employment or the separation thereof.

9. **Association Acknowledgement.** The Association signs this Agreement only as to the extent this Agreement discusses rights covered under the Collective Bargaining Agreement between the City and the Association, and any related state or federal laws enforcing the same. The Association's signature does not indicate any opinion by its

representatives, agents, or employees regarding the rights Association members may have under any state, federal or local law prohibiting discrimination on the basis of any protected class, or which prohibit retaliation in any way related to the filing of such a claim. Neither the Association, nor its representatives, agents, or employees make any representation by their signature of Employee's rights under any such claim.

10. **Duty of Fair Representation.** Employee acknowledges that the Association has met its Duty of Fair Representation to him in that the Association has represented his interests fairly, impartially and without discrimination.

11. **Employee Acknowledgement.** Employee further states and agrees that he has read this Agreement, that he has had the opportunity to have it fully explained to him by an non-Association attorney of his choice, that he fully understands its final and binding effect, and that the only promises made to him to sign this Agreement are those stated in this Agreement, and that he is signing this Agreement freely and voluntarily.

12. **Choice of Law, Severability, and Entire Agreement.** This Agreement shall be construed and enforced in accord with the laws of the State of Wisconsin. It constitutes the entire agreement between the parties as to issues provided for in this Agreement. Headings are for the convenience of the parties only and shall not affect the interpretation or application of this Agreement. This Agreement is the product of mutual negotiations, and no rules of strict construction shall be applicable against either party. If for any reason a court of competent jurisdiction finds a provision of this Agreement to be illegal or unenforceable, the offending provision will be deemed amended or deleted to the extent necessary to conform to applicable law. This Agreement may be executed in counterparts and shall be as effective as if executed on one document. Facsimile signatures shall be as effective and valid as original signatures. This Agreement shall only be valid and binding upon the signatures of all parties.

**IN WITNESS THEREFORE**, the undersigned state that they have carefully read the foregoing Agreement, know and understand its contents and sign the same under their own free will, being duly authorized to do so.

8-10-16
Date

Officer Nathan Poke

8/10/16
Date

Wisconsin Professional Police Association
Andrew D. Schauer, WPPA Staff Attorney

On Behalf of the City of La Crosse

_____
Date

Separation Agreement between Nathan Poke, WPPA and City of La Crosse

[TO BE PLACED ON POLICE DEPARTMENT LETTERHEAD]

[Date]

Re: Letter of Reference

To Whom it May Concern:

Officer Nathan Poke has served the City of La Crosse Police Department as a sworn law enforcement officer since August 23rd, 2011.

A review of his personnel file shows that Officer Poke has received very favorable comments and evaluations from his superiors. For example, in his very first evaluation, his evaluator praised his knowledge and appearance and wrote:

> Officer Poke always has a smile on his face and brings a great attitude to work every day, Nate is professional and courteous with the public he serves, his peers and his supervisors. Nate is also very willing to assist on calls or take calls for other officers who have a larger workload.
>
> Nate's efforts throughout the shift show in his high activity level and desire to learn and do more. Nate is one of the shift leaders in activity level.
>
> Officer Poke does a very good job with his report writing and citations. Nate's reports are well written and descriptive. Nate's reports contain all the necessary information. Nate is becoming very accustomed to using dictation for his reports and his reports are easy to read.
>
> Nate has received numerous positive emails from supervisors acknowledging his performance and report writing. Those emails show that Officer Poke really puts a lot of effort into what he does and what he signs his name to.

We rank our officers on a five-point scale of various criteria of performance evaluation, and in each of his evaluations, Officer Poke received mostly fives and no rating lower than four. In his second evaluation, our evaluator cited, "numerous positive e-mails and supervisory notes given by command staff," and wrote:

> Nate embraces the teamwork philosophy with his peers and supervisors by volunteering for calls and aiding fellow officers. Officer Poke is respectful and courteous with the public and his peers.

> Officer Poke . . . is one of the leaders in self-initiated activity on second shift. Nate is a very active officer in our department. He accepts calls that he is dispatched to and provides great service to the community, while at the same time being very proactive during his down time.

We also track officer performance through quantitative metrics. Here is one of our quarterly summaries of Officer Poke's statistics:

> Officer Poke's self-initiated activity is at a 4.4 which is way above the shift high performance standard of 4.1. His total activity was at a 9.1 which is also above the shifts average of 8.0.

> It should be noted that Officer Poke was also above shift average in calls for service for the year.

In March 2013 I appointed Officer Poke to the department's new position titled, "Neighborhood Response Officer." This program was designed to allow the department to go out into the community and build positive relationships and partnerships with different stakeholders in our community. Numerous people in the department applied for this position, but it was evident through interviews and essays that Nate truly had a passion to make our community better and was selected for this position.

During Officer Poke's time this position he truly made a difference with a lot of youth in our community. Nate spent a lot of time at our local Boys and Girls Club as well as worked with our local YMCA and Big Brothers Big Sisters programs.

On May 15, 2014, I presented Officer Poke with our Department's Traffic Safety Award, commending him for "leading the department in the combined traffic enforcement of operating while intoxicated, speeding, seatbelt and traffic signal violations with 523 total traffic stops" in 2013.

Officer Poke notified me of his decision to resign from the City for reasons personal to him.

Respectfully,


Ron Tischer
Chief of Police
City of La Crosse Police Department
cc: Personnel File

26714720_4.DOCX