# In the
# United States District Court
## for the
# Western District of Wisconsin

Nathan M. Poke,

    Plaintiff,

    v.                                   Case No. 19-cv-33

The City of La Crosse, Wisconsin,
and Ron Tischer, Chief of Police,

    Defendants.

## Plaintiff's Supplemental Proposed Findings of Fact

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar Number 1016284
131 West Wilson Street, Suite 1200
Madison, WI  53703-3225
Phone:       608 283-6001
Fax:         608 283 0945
Email:       jsolson@scofflaw.com

The Plaintiff, Nathan M. Poke, by his attorneys, the Jeff Scott Olson Law Firm, S. C., hereby submits that there is evidence in the record from which a reasonable trier of fact could make the following findings of fact:

1. On September 11, 2015, La Crosse Human Resources Director Wendy Oestreich telephoned Poke and told him that he would be placed on non-disciplinary administrative leave while his complaints of retaliation were investigated. (Olson Declaration, dkt. # 26, Exhibit A, Responses 142, 143, 147, 148, 149.)

2. On September 17, 2015, Poke received a phone call from Sergeant Blockhuis, who told him that the Chief of Police had decided to place Poke on administrative leave. (Olson Declaration, dkt. # 26, Exhibit A, Response 155.)

3. Poke was also given a memo from Chief Tischer entitled, "Rules While on Administrative Leave" informing Poke that he was being placed on administrative leave "based on the seriousness of recently reported allegations of multiple policy violations." (Olson Declaration, dkt. # 26, Exhibit A, Response 160.)

4. On January 7, 2016, the La Crosse Police Department's investigation of Poke had progressed to a point that, on that day, Poke was interviewed by a lawyer the City had hired to conduct an investigation of his alleged wrongdoing, Eileen A. Brownlee, of the Madison, Wisconsin, law firm, Boardman & Clark, LLP. (Declaration of Nathan M. Poke, dkt. # 25, ¶ 2.)

5. This interview took several hours. (Declaration of Nathan M. Poke, dkt. # 25, ¶ 3.)

6. Brownlee asked Poke about those allegations of which Poke had been aware since his demotion, but she also asked Poke about "starting investigations" without approval by looking up general orders that the Assistant Chief Abraham might have violated when he and his friend were pulled over and his friend was arrested for OWI on a boat. Because Poke had asked another officer what orders he thought were violated by that conduct, Brownlee was investigating Poke for having started an investigation into Assistant Chief Abraham's conduct without permission from his superiors. (Declaration of Nathan M. Poke, dkt. # 25, ¶ 4.)

7. Someone had listened to all of the audio recordings from Poke's first week of working patrol after his demotion. Brownlee asked Poke about having told people that Poke was probably going to quit the force and move away. She asked whether Poke had asked Brenda Jackson if she had slept with a particular lieutenant. She asked whether Poke had asked Brenda Jackson whether that lieutenant uses cocaine. (Declaration of Nathan M. Poke, dkt. # 25, ¶ 5.)

8. Brownlee stated that Poke had improperly revealed the identity of an informant to someone while working. (Declaration of Nathan M. Poke, dkt. # 25, ¶ 6.)

9. The last part of the interview ended with Brownlee asking Poke a few questions pertinent to his original complaints about Officer Ulrich back on August 14 and 31. (Declaration of Nathan M. Poke, dkt. # 25, ¶ 7.)

10. Poke had arranged to be represented at the Brownlee interview by an attorney from the Wisconsin Professional Police Association, Andrew D. Schauer. (Declaration of Nathan M. Poke, dkt. # 25, ¶ 8.)

11. Attorney Schauer told Poke that he was in communication with the City's attorney, James R. Korom, prior to the Brownlee interview. (Declaration of Nathan M. Poke, dkt. # 25, ¶ 9.)

12. After the Brownlee interview, Attorney Schauer told Poke that he had learned from Attorney Korom that the City was absolutely intent upon terminating Poke's employment. (Declaration of Nathan M. Poke, dkt. # 25, ¶ 10.)

13. Investigations of Poke's complaints against the Police Department had been covered extensively in the media. (Declaration of Nathan M. Poke, dkt. # 25, ¶ 11.)

14. Attorney Schauer, who had represented many, many police officers in disciplinary cases, and Poke discussed how, if the Chief of Police brought charges seeking his discharge before the Police and Fire Commission, there would likely be extensive publicity, and the fact that charges seeking his discharge, and the nature of the charges brought against him, would be readily accessible to anyone using Google to do an internet search for his name. (Declaration of Nathan M. Poke, dkt. # 25, ¶ 11.)

15. They were both of the opinion that, especially because of the likely publicity, discharge proceedings before the Police and Fire Commission would

probably be fatal to his employability in law enforcement, however the proceedings turned out. (Declaration of Nathan M. Poke, dkt. # 25, ¶ 11.)

16. They were also both of the opinion that the Police and Fire Commission would almost certainly support the Chief of Police in a discharge case, even a weak one. (Declaration of Nathan M. Poke, dkt. # 25, ¶ 12.)

17. Because Poke did not believe that there was any chance to preserve his employment and reputation by opposing the City's efforts to fire Poke through available channels, and because Poke did not want to extinguish any chance Poke might have to ever be employed by a different police department, Poke authorized Attorney Schauer and Attorney Jeff Scott Olson to negotiate for the most favorable terms of resignation they could secure. (Declaration of Nathan M. Poke, dkt. # 25, ¶ 13.)

18. On August 10, and 11, 2016, respectively, the City's representative, Chief of Police Ron Tischer, and Poke signed an agreement that effected the termination of his employment with the City of La Crosse. (Declaration of Nathan M. Poke, dkt. # 25, ¶ 14.)

19. The agreement provides that it "shall not bar Employee from pursuing any legal claim alleging race discrimination against the City." (Declaration of Nathan M. Poke, dkt. # 25, ¶ 14, Exhibit A, page 2 of 6.)

Dated this Thursday, September 19, 2019.

Respectfully submitted,

Nathan M. Poke,

Plaintiff

By

> THE JEFF SCOTT OLSON LAW FIRM, S.C.
> JEFF SCOTT OLSON
> State Bar Number 1016284
> 131 West Wilson Street, Suite 1200
> Madison, WI  53703-3225
> Phone:      608 283-6001
> Fax:           608 283 0945
> Email:       jsolson@scofflaw.com
>
>
> /s/     Jeff Scott Olson
> _____
> Jeff Scott Olson
>
>
> ATTORNEYS FOR PLAINTIFF

### Certificate of Service

Poke hereby certify that on Thursday, September 19, 2019, Poke electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following:  Christopher P. Riordan, and Poke hereby certify that Poke have mailed by United States Postal Service the document to the following non ECF participants: none.

____/s/ Jeff Scott Olson____