IN THE
# UNITED STATES DISTRICT COURT
FOR THE
# WESTERN DISTRICT OF WISCONSIN

Nathan M. Poke,

    Plaintiff,

    v.                                      Case No. 19-cv-33

The City of La Crosse, Wisconsin,
and Ron Tischer, Chief of Police,

    Defendants.

# Plaintiff's Brief
# In Opposition To Defendants' Motion
# For Partial Summary Judgment

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar Number 1016284
131 West Wilson Street, Suite 1200
Madison, WI  53703-3225
Phone:	608 283-6001
Fax:	608 283 0945
Email:	jsolson@scofflaw.com

# Table of Contents

Table of Contents ............................................................................................................. i
Statement of the Case .................................................................................................... 1
Relevant Federal Rules.................................................................................................. 1
Argument ....................................................................................................................... 4
    I.    On a Summary Judgment Motion, the Movant Picks the Issues and the Opponent Gets the Benefit of Any Disputed Facts and any Competing Inferences......................... 4
    II.    The Separation Agreement Poke signed with the City exempted claims based on race discrimination from its release and covenant not to sue. ......................................... 5
    III.    An employee who resigns to avoid certain termination can recover damages for his constructive discharge................................................................................................ 6
    IV.    Constructive discharge is an objective damages construct. .................................... 7
    V.    A Plaintiff who resigns to forestall impending action by his employer that would likely be fatal to his employability in his chosen field can show constructive discharge. ......................................................................................................................... 8
    VI.    The Plaintiff does not ask to rescind his Separation Agreement.......................... 13
Conclusion ................................................................................................................... 13

## Statement of the Case

This race discrimination action was filed on January 20, 2019, by Nathan Poke, a black former La Crosse, Wisconsin, police officer, against the City of La Crosse and its police chief, Ron Tischer. Officer Poke alleged that he had been unlawfully discriminated against on the basis of his race "when he was placed on leave and relieved of his most significant duties, and then investigated and constructively discharged from his employment." (Dkt. # 1, ¶¶ 501, 502, 503.) The Defendants waived service (dkt. # 3) and file an Answer (dkt. # 5). The Defendants have now filed a motion for partial summary judgment, asking the Court to rule that a separation agreement the Plaintiff signed with the City in August, 2016, precludes him from seeking damages for his alleged constructive discharge.

## Relevant Federal Rules

Rule 56 of the Federal Rules of Civil Procedure provides:

(a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b) Time to File a Motion. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c) Procedures.

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

(e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

> (1) give an opportunity to properly support or address the fact;

>(2) consider the fact undisputed for purposes of the motion;
>
>(3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or
>
>(4) issue any other appropriate order.

(f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:

>(1) grant summary judgment for a nonmovant;
>
>(2) grant the motion on grounds not raised by a party;or
>
>(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(g) Failing to Grant All the Requested Relief. If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case.

(h) Affidavit or Declaration Submitted in Bad Faith. If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

3

**Argument**

I.  **On a Summary Judgment Motion, the Movant Picks the Issues and the Opponent Gets the Benefit of Any Disputed Facts and any Competing Inferences.**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden of establishing the lack of any genuine issue of material fact is always upon the movant. *Outlaw v. Newkirk*, 259 Fed.3d 833, 837 (7th Cir. 2001).

A "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks and citations omitted).

A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, the record must be examined with all reasonable inferences drawn in favor of the non-moving party and all factual disputes resolved in favor of the non-moving party, and a court may not weigh the evidence or the credibility of witnesses. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### II. The Separation Agreement Poke signed with the City exempted claims based on race discrimination from its release and covenant not to sue.

Much of the Defendants' Memorandum is spent in arguing that the Separation Agreement bars Mr. Poke from recovering damages for what he alleges to have been a constructive discharge caused by race discrimination. But the Separation Agreement upon which the current motion is based specifically provides that it "shall not bar Employee from pursuing a legal claim alleging race discrimination against the City." (Defendants' PFF # 4, ¶ 3.) Indeed, the parties were obviously contemplating such litigation, as they also protected the City with the next sentence: "In the event of such litigation, Employee agrees the Letter of Reference attached hereto as Appendix A may not be used or offered into evidence in such litigation." The Defendants' moving papers, apart from quoting this language as part of the entire Separation Agreement, never acknowledge it, much less discuss its potential bearing on the Plaintiff's assertion that he was constructively discharged. But for it, the entire case would have to be dismissed based on the Separation Agreement. Because it is there, however, Plaintiff Poke is entitled to pursue his race discrimination claim and recover all damages he might recover in the absence of the Separation Agreement, including damages flowing from a constructive discharge, if he is able to prove that such occurred.

### III. An employee who resigns to avoid certain termination can recover damages for his constructive discharge.

The idea of a constructive discharge is that the damages that flow from it are recoverable by the victim of the unlawful conduct that caused it, just as they would be if the discrimination had culminated in a real discharge. *See, e.g.*, *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004)("a constructive discharge is functionally the same as an actual termination in damages-enhancing respects.")

> . . .to demonstrate constructive discharge, the plaintiff must show that she was forced to resign because her working conditions, from the standpoint of the reasonable employee, had become unbearable. See, e.g., *Lindale v. Tokheim Corp.*, 145 F.3d 953, 955 (7th Cir.1998). We are ordinarily faced with a situation in which the employee only alleges that she resigned because of discriminatory harassment, and in such cases, we require the plaintiff to demonstrate a discriminatory work environment even more egregious than the high standard for hostile work environment.

*E.E.O.C. v. Univ. of Chicago Hospitals*, 276 F.3d 326, 331-32 (7th Cir. 2002)(internal quotation marks and citations omitted.)

Granted, it might be very difficult for a discrimination plaintiff to establish a constructive discharge where there was a real remedy available to him. (Defendants' Memorandum, dkt. # 21, at 10.) But that is not the case, here. The discriminatory action which Mr. Poke reasonably sought to short-circuit by his resignation was his formal termination by the highest authorities in the police department. A person's decision to quit a job when he knows for sure he will be fired soon is a constructive discharge, *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 377 (7th Cir. 1998) ("Constructive

discharge exists to give Title VII protection to a plaintiff who decides to quit rather than wait around to be fired.")

A complainant can establish a constructive discharge where he proves the existence of, "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004). *Cf. Hunt v. City of Markham, Illinois*, 219 F.3d 649, 655 (7th Cir. 2000) ("A person who is told repeatedly that he is not wanted, has no future, and can't count on ever getting another raise would not be acting unreasonably if he decided that to remain with this employer would necessarily be inconsistent with even a minimal sense of self- respect, and therefore intolerable."); *Henn v. Nat'l Geographic Soc'y*, 819 F.2d 824, 829-30 (7th Cir. 1987).

**IV.     Constructive discharge is an objective damages construct.**

The City presents indications that Poke may have felt less than anguished about the prospect of leaving the La Crosse Police Department to seek employment in the Minneapolis – St. Paul area. But the issue presented by the assertion of constructive discharge is not subjective, and the Plaintiff's subjective reactions or lack thereof to his treatment are not controlling. Constructive discharge presents an objective question. The issue is not whether the Plaintiff felt compelled to resign, but whether "a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004).

### V. A Plaintiff who resigns to forestall impending action by his employer that would likely be fatal to his employability in his chosen field can show constructive discharge.

On September 11, 2015, La Crosse Human Resources Director Wendy Oestreich telephoned Poke and told him that he would be placed on non-disciplinary administrative leave while his complaints of retaliation were investigated. (Plaintiff's Supplemental Proposed Findings of Fact (PSPFOF) dkt. # 27, ¶ 1; Olson Declaration, dkt. # 26, Exhibit A, Responses 142, 143, 147, 148, 149.) On September 17, 2015, Poke received a phone call from Sergeant Blockhuis, who told him that the Chief of Police had decided to place Poke on administrative leave. (PSPFOF, dkt. # 27, ¶ 2; Olson Declaration, dkt. # 26, Exhibit A, Response 155.) Poke was also given a memo from Chief Tischer entitled, "Rules While on Administrative Leave" informing Poke that he was being placed on administrative leave "based on the seriousness of recently reported allegations of multiple policy violations." (PSPFOF, dkt. # 27, ¶ 3; Olson Declaration, dkt. # 26, Exhibit A, Response 160.)

On January 7, 2016, the La Crosse Police Department's investigation of Poke had progressed to a point that, on that day, Poke was interviewed by a lawyer the City had hired to conduct an investigation of his alleged wrongdoing, Eileen A. Brownlee, of the Madison, Wisconsin, law firm, Boardman & Clark, LLP. (PSPFOF, dkt. # 27, ¶ 4; Declaration of Nathan M. Poke, dkt. # 25, ¶ 2.) This interview took several hours. (PSPFOF, dkt. # 27, ¶ 5; Declaration of Nathan M. Poke, dkt. # 25, ¶ 3.)

Brownlee asked Poke about those allegations of which Poke had been aware since his demotion, but she also asked Poke about "starting investigations" without approval by looking up general orders that the Assistant Chief Abraham might have violated when he and his friend were pulled over and his friend was arrested for OWI on a boat. Because Poke had asked another officer what orders he thought were violated by that conduct, Brownlee was investigating Poke for having started an investigation into Assistant Chief Abraham's conduct without permission from his superiors. (PSPFOF, dkt. # 27, ¶ 6; Declaration of Nathan M. Poke, dkt. # 25, ¶ 4.) Brownlee asked Poke about having told people that Poke was probably going to quit the force and move away. She asked whether Poke had asked Brenda Jackson if she had slept with a particular lieutenant. She asked whether Poke had asked Brenda Jackson whether that lieutenant uses cocaine. (PSPFOF, dkt. # 27, ¶ 7; Declaration of Nathan M. Poke, dkt. # 25, ¶ 5.)

Brownlee stated that Poke had improperly revealed the identity of an informant to someone while working. (PSPFOF, dkt. # 27, ¶ 8; Declaration of Nathan M. Poke, dkt. # 25, ¶ 6.)

Poke had arranged to be represented at the Brownlee interview by an attorney from the Wisconsin Professional Police Association, Andrew D. Schauer. (PSPFOF, dkt. # 27, ¶ 10; Declaration of Nathan M. Poke, dkt. # 25, ¶ 8.) Attorney Schauer told Poke that he was in communication with the City's attorney, James R. Korom, prior to the

9

Brownlee interview. (PSPFOF, dkt. # 27, ¶ 11; Declaration of Nathan M. Poke, dkt. # 25, ¶ 9.)

After the Brownlee interview, Attorney Schauer told Poke that he had learned from Attorney Korom that the City was absolutely intent upon terminating Poke's employment. (PSPFOF, dkt. # 27, ¶ 12; Declaration of Nathan M. Poke, dkt. # 25, ¶ 10.) Investigations of Poke's complaints against the Police Department had been covered extensively in the media. (PSPFOF, dkt. # 27, ¶ 13; Declaration of Nathan M. Poke, dkt. # 25, ¶ 11.) Attorney Schauer, who had represented many, many police officers in disciplinary cases, and Poke discussed how, if the Chief of Police brought charges seeking his discharge before the Police and Fire Commission, there would likely be extensive publicity, and the fact that charges seeking his discharge, and the nature of the charges brought against him, would be readily accessible to anyone using Google to do an internet search for his name. (PSPFOF, dkt. # 27, ¶ 14; Declaration of Nathan M. Poke, dkt. # 25, ¶ 11.) They were both of the opinion that, especially because of the likely publicity, discharge proceedings before the Police and Fire Commission would probably be fatal to his employability in law enforcement, however the proceedings turned out. (PSPFOF, dkt. # 27, ¶ 15; Declaration of Nathan M. Poke, dkt. # 25, ¶ 11.)

They were also both of the opinion that the Police and Fire Commission would almost certainly support the Chief of Police in a discharge case, even a weak one. (PSPFOF, dkt. # 27, ¶ 16; Declaration of Nathan M. Poke, dkt. # 25, ¶ 12.)

Because Poke did not believe that there was any chance to preserve his employment and reputation by opposing the City's efforts to fire him through available channels, and because he did not want to extinguish any chance he might have to ever be employed by a different police department, Poke authorized Attorney Schauer and Attorney Jeff Scott Olson to negotiate for the most favorable terms of resignation they could secure. (PSPFOF, dkt. # 27, ¶ 17; Declaration of Nathan M. Poke, dkt. # 25, ¶ 13.)

On August 10, and 11, 2016, respectively, the City's representative, Chief of Police Ron Tischer, and Poke signed an agreement that effected the termination of his employment with the City of La Crosse. (PSPFOF, dkt. # 27, ¶ 18; Declaration of Nathan M. Poke, dkt. # 25, ¶ 14.) The agreement provides that it "shall not bar Employee from pursuing any legal claim alleging race discrimination against the City." (PSPFOF, dkt. # 27, ¶ 19; Declaration of Nathan M. Poke, dkt. # 25, ¶ 14, Exhibit A, page 2 of 6.)

The Defendants acknowledges that just availing himself of a hearing before the Police and Fire Commission would likely have ended Plaintiff Poke's career in law enforcement. They write: "*A disciplinary charge* or finding by the police and fire commission of termination for misconduct would have scuttled Poke's pursuit of job opportunities with police departments in the "Cities." (Defendants' Memorandum, dkt. # 21, 14, emphasis supplied.) Even if it were the *only* effect of a discriminatory act or series of acts, the extinction of an individual's opportunity to find work in his chosen field would be a sufficiently serious consequence that a reasonably jury could find that

11

an employee who resigns to avoid it has been constructively discharged, because a reasonable employee in his shoes would feel compelled to resign.  It is not just the on-the-job effects of unlawful discrimination that go into the damages determination in a Title VII case.  "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment. . ."  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)(internal case quotations and citations omitted.)

Indeed, if Plaintiff Poke had not resigned, a savvy employer might argue that he had violated his duty to mitigate his damages, by staying around to participate in a public airing of the allegations against him. In *Williams v. Pharmacia, Inc.*, 137 F.3d 944 (7th Cir. 1998), the Seventh Circuit said:

> Williams's expert witness testified that the poor evaluations Williams received and Pharmacia's eventual termination of her employment taint Williams's employment record. The jury was entitled to rely on this testimony in finding that Pharmacia's acts of discrimination diminish Williams's future earning capacity in the same way that a physical injury may diminish the earning capacity of a manual laborer.

*Id.*, at 952.

The Defendants say, "Poke resigned to avoid a disciplinary charge and a potential finding of misconduct that would have derailed his pursuit of other job opportunities."  (Defendants' Memorandum, dkt. # 21, 15.)  Under the law creating his duty to mitigate the damages flowing from the Defendants' discriminatory acts, this may have been exactly what the law required him to do. He was certainly in serious enough jeopardy of career-ending events had he stayed that it was reasonable for him

12

to resign. The discriminatory and "intolerable working conditions" Poke resigned to escape were the career-ending filing of charges by his Chief of Police with the Police and Fire Commission seeking his discharge.

## VI. The Plaintiff does not ask to rescind his Separation Agreement.

The Plaintiff is not asking the Court to let him rescind his Separation Agreement, or contending that it is in any way defective. It permits him to bring a race discrimination action and it nowhere limits the relief he may recover in such an action. "Constructive discharge" is not some sort of separate tort apart from race discrimination. It is simply a rule for determining one aspect of a successful plaintiff's relief.

## Conclusion

The Defendants' Motion for Partial Summary Judgment should be denied in its entirety.

Dated this Thursday, September 19, 2019.

    Respectfully submitted,

    Nathan M. Poke,

    Plaintiff

    By

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar Number 1016284
131 West Wilson Street, Suite 1200
Madison, WI 53703-3225
Phone: 608 283-6001
Fax: 608 283 0945
Email: jsolson@scofflaw.com


/s/    Jeff Scott Olson
_____
Jeff Scott Olson


ATTORNEYS FOR PLAINTIFF

### Certificate of Service

I hereby certify that on Thursday, September 19, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Christopher P. Riordan, and I hereby certify that I have mailed by United States Postal Service the document to the following non ECF participants: none.

_____/s/ Jeff Scott Olson_____