UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

NATHAN M. POKE,

    Plaintiff,

v.                                               Case No. 19-CV-33

CITY OF LA CROSSE, WISCONSIN and
RON TISCHER,

    Defendants.

## REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants, City of La Crosse and Ronald Tischer, by their attorneys, von Briesen & Roper, s.c., submit the following Reply to Plaintiff's Brief in Opposition to Defendants' Motion for Partial Summary Judgment.

### ARGUMENT

**1. The Separation Agreement precludes Poke's claim of a constructive discharge.**

In his initial response to Defendants' Motion for Partial Summary Judgment, Poke contends the Separation Agreement does not bar his claim of a constructive discharge, because the agreement exempts claims for discrimination based on race. Plaintiff wrote the Separation Agreement "specifically provides that it 'shall not bar [Poke] from pursuing a legal claim alleging race discrimination against the City.' (Defendants' PFF # 4, ¶ 3.)" (Plaintiff's Brief in Opposition, dkt. # 28, p. 5).

Plaintiff, in making this argument, failed to address the entirety of Sections 3 and Section 4 of the Separation Agreement. In acceding to the terms of Section 4 of the agreement, Poke agreed

1

he would be barred from pursuing each and every claim, demand and cause of action described in Section 3. Section 4 states in full as follows:

> 4. **Effect of Release**.  Employee intends, in executing this Agreement, that it shall be effective as a bar to each and every claim, demand and cause of action described in Section 3. The City agrees, upon the Employee's execution of this document, to immediately terminate any and all disciplinary investigations and proceedings, and further agrees that it will make no effort to terminate the Employee's employment prior to the above Separation Date.

(PFF 4, § 4).

Paragraph 1 of Section 3 of the Separation Agreement states that Poke agreed to discharge and release the City of La Crosse, as well as the City's employees and officials from any and all actions, causes of action, claims, demands and damages, except as specified later in the agreement. Paragraph 1 of Section 3 reads as follows:

> 3. **Waiver and Release**.  In consideration of the City's obligations and promises under this Agreement, Employee does hereby fully and forever discharge and release the City, which includes all departments and agencies, and all of the foregoing's past and present employees, officials, agents, representatives, insurers, and attorneys (collectively, the "Released Parties"), from any and all actions, causes of action, claims, demands, damages (including but not limited to punitive damages), costs, expenses, attorneys' fees, and compensation on account of, or in any way growing out of any and all known and unknown damage resulting to or to result from any action by the Released Parties which arose on or before the date of Effective Date of this Agreement, except as specifically described below.

(PFF 4, § 3, ¶ 1).

It is set forth in paragraph 2 of Section 3 of the Separation Agreement that the release includes "all claims, demands, or actions brought on the basis of alleged <u>wrongful or retaliatory discharge</u>." (PFF 4, § 3, ¶ 2). (Emphasis added). Paragraph 2 of Section 3 provides, in part, as follows:

> By way of example only without in any way limiting the generality of the forgoing language, [Poke's] release shall include all claims for relief or causes of action under the collective bargaining agreement …

2

> … or public policy dealing win any respect with discrimination or separation of employment, including any claims alleging a violation of public policy, and, **in addition, from all claims, demands, or actions brought on the basis of alleged wrongful or retaliatory discharge** …
>
> \*   \*   \*

(PFF 4, ¶ 2, § 3.)

The parties, in paragraph 3 of Section 3 of the Separation Agreement, agreed Poke should not be barred "from pursuing any legal claim alleging race discrimination against the City." Paragraph 3 of Section 3 states as follows:

> This Section shall have no effect on and shall not apply to any claim by Employee pursuant to Wisconsin's worker's compensation laws or Wisconsin's unemployment compensation laws, or any claim to enforce this Agreement. Employee asserts, and the City denies, the existence of a legal claim based on discrimination against the Employee based on race. **The parties further agree this paragraph shall not bar Employee from pursuing a legal claim alleging race discrimination against the City**. In the event of such litigation, Employee agrees the Letter of Reference attached hereto as Appendix A may not be used or offered into evidence in such litigation.

(PFF 4, ¶ 3, § 3.) (Emphasis added).

Courts have held when interpreting a contract provision, the court must read the language within the context of the contract as a whole rather than interpreting a sentence or paragraph in a vacuum. *Marlowe v. IDS Prop. Cas. Ins. Co.*, 2013 WI 29, ¶ 44, 346 Wis. 2d 450, 828 N.W.2d 812. Courts have also determined an "important rule employed in construing agreements is that where there is an apparent conflict between a general and a specific provision, the latter controls." *Goldman Trust v. Goldman*, 26 Wis. 2d 141, 148, 131 N.W.2d 902 (1965).[1]

---

[1] **12.   Choice of Law, Severability, and Entire Contract.**   This Agreement shall be construed and enforced in accord with the laws of the State of Wisconsin. It constitutes the entire agreement between the parties as to issues provided for in this Agreement. Headings are for the convenience of the parties only and shall not affect the interpretation or application of this Agreement. This Agreement is the product of mutual negotiations, and no rules of strict construction shall be applicable against either party. If for any reason a court of competent jurisdiction finds a provision of this Agreement to be illegal or unenforceable, the offending provision will be deemed amended or deleted to the extent necessary to conform to applicable law. This Amendment may be executed in counterparts and shall be

3

Read together paragraphs 2 and 3 of Section 3 appear to be in conflict. As such, a decision must be made as to which is provision is the general and specific provisions to determine the agreement's controlling provision. The provision in paragraph 3 of Section 3 of the Separation Agreement states "[t]he parties further agree this paragraph shall not bar Employee from pursuing a legal claim alleging race discrimination against the City." Paragraph 2 can only be viewed as a general provision. This provision, which exempts race-based claims of discrimination, neither specifies nor identifies the type of race-based discrimination claim permitted.

In contrast, the provision in paragraph 2 of Section 3 of the Separation Agreement, which released the City of La Crosse and all of its employees and officials, from all claims, demands, or actions brought on the basis of an alleged wrongful or retaliatory discharge, identifies the specific claims discharged by the Plaintiff. As noted in *Goldman Trust v. Goldman*, when there appears to be a conflict between a general and specific provision the latter controls. Paragraph 2 controls in this case.

## 2. Poke had a real remedy through which he could have sought redress for the alleged "intolerable" work environment that lead to his resignation; therefore, he was not constructively discharged.

Poke also argues in response to Defendants' Motion for Partial Summary Judgment that he did not have a real remedy through which he could seek redress for the alleged "intolerable" work environment that lead to his resignation. Poke wrote "[g]ranted, it might be very difficult for a discrimination plaintiff to establish a constructive discharge where there was a real remedy available to him. (Defendants' Memorandum, dkt. # 21, at 10.) But that is not the case, here." (Plaintiff's Brief in Opposition, dkt. # 28, p. 5).

---

as effective as if executed on one document. Facsimile signatures shall be as effective and valid as original signatures. This Agreement shall only be valid and binding upon the signatures of all parties. (PFF 4, ¶ 12.)

4

In this case, Poke alleged he resigned from the police department before the Chief of Police could terminated him. Contrary to Poke's contention, under Wis. Stat. § 62.13(5)(em), the Chief cannot unilaterally terminate Poke. After the filing of charges, the Police and Fire Commission must determine if there is just cause for the termination. *See* Wis. Stat. § 62.13(5)(em). In addition, no charges had been brought against Poke prior to his resignation. As noted by the court in *Chapin v. Fort-Rohr Motors, Inc.*, "a working condition does not become intolerable or unbearable merely because a 'prospect of discharge lurks in the background.' *Cigan*, 388 F.3d at 333." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010).

Poke presents no evidence that his termination was imminent. There is no evidence Poke was told repeatedly he was not wanted, had no future, and was not going to receive a raise. The only evidence offered regarding termination was Poke being told on one occasion "the City was absolutely intent upon terminating [his] employment." (Declaration of Nathan M. Poke, dkt. # 25, ¶ 10.) The court in *Cross v. Chicago Sch. Reform Bd. of Trustees* found that "[a] single offensive photograph and wholly unspecified 'offensive conduct and commentary' cannot, as a matter of law, establish the basis of a constructive discharge claim." *Cross v. Chicago Sch. Reform Bd. of Trustees*, 80 F.Supp.2d 911, 917 (N.D.Ill. 2000). A single comment concerning Poke's possible termination cannot establish, as a matter of law, the basis of a constructive discharge claim.

3. **Poke had a remedy through which he could seek redress for the alleged "intolerable" work environment that lead to his resignation; therefore, he was not constructively discharged.**

Finally, the Seventh Circuit has been reluctant to find a constructive discharge where an employee felt compelled to resign because of intolerable working circumstances but failed to seek redress through available remedies. "In deciding whether an employee has been constructively discharged, [the Seventh Circuit] has adopted a test that focuses on the impact of the employer's

5

actions on a reasonable person. *Id.* In *Brooms* we held that constructive discharge is established where 'a reasonable employee would have felt compelled to resign under the circumstances of th[e] case.' *Id.* at 423; *see also Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 314 (7th Cir. 1986), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987) (finding constructive discharge where the unlawful conduct makes an employee's working conditions 'so intolerable that the employee is forced into an involuntary resignation.'). In *Brooms* we also cited with approval language from *Bailey v. Binyon*, 583 F.Supp. 923, 929 (N.D.Ill. 1984), noting that '[a]n employee must seek legal redress while remaining in his or her job unless confronted with an 'aggravated situation' beyond 'ordinary' discrimination." *Rodgers v. Western-Southern Life Ins.*, 12 F.3d 668, 677 (7th Cir. 1993).

Poke neither alleged nor testified that he resigned his job as a police officer for the City of La Crosse, because he confronted an "aggravated situation" beyond "ordinary" discrimination. Poke alleged in his Complaint "that his resignation pursuant to [the Separation Agreement] was a constructive discharge, since [he] resigned only in order to avoid [his] certain termination for alleged misconduct." (Document No. 1, ¶ 4142.)

## CONCLUSION

Without having experienced an adverse employment action, Poke cannot support a constructive discharge claim. Therefore, this Court should grant Defendants' Motion for Summary Judgment with regard to Plaintiff's claim of a constructive discharge.

Dated this 30th day of September, 2019.

                von Briesen & Roper, s.c.
                *Attorneys for Defendants, City of La Crosse and Ronald Tischer*

                /s/ Christopher P. Riordan
                Christopher P. Riordan, SBN 1018825

411 East Wisconsin Ave. Suite 1000
Milwaukee, WI 53202
414-287-1268
414-238-6635 – Facsimile
criordan@vonbriesen.com

33715242_1