UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

_____

NATHAN M. POKE,

               Plaintiff,

   vs.

                                     Case No. 19-CV-33

CITY OF LA CROSSE, WISCONSIN,
and RON TISCHER,

               Defendants.

_____

**BRIEF IN OPPOSITION TO PLAINTIFF'S
MOTIONS TO COMPEL NOS. I, II, AND III**

_____

Defendants, City of La Crosse and Ronald Tischer, by their attorneys, von Briesen & Roper, s.c., submit the following Brief in Response to Plaintiff's Motions to Compel Nos. I, II, and III.

## BACKGROUND FACTS[1]

Poke began as a police officer with the City of La Crosse Police Department on August 23, 2011. (PFF 5.) He resigned his position as a police officer with the City of La Crosse Police Department on August 10, 2016. (PFF 6.) The terms and conditions of Poke's resignation were memorialize in the written Separation Agreement. (PFF 3.) Poke entered into the Separation Agreement with the City of La Crosse and the Wisconsin Professional Police Association on August 10, 2016. (PFF 7.)

On December 27, 2016, Poke filed a discrimination complaint with the Equal Rights Division of the Wisconsin Department of Workforce Development. (PFF 8.) In his ERD

_____

[1] The designation "PFF" as used in the section "BACKGROUND FACTS" is from Defendant's "Proposed Findings of Fact in Support of Motion for Partial Summary Judgment" which were previously filed with the Court on August 30, 2019, Dkt. 22.

Complaint, Poke alleged the City of La Crosse discriminated against him based on "race" in violation of the Wisconsin Fair Employment Act, and his "voluntary resignation" pursuant to the Separation Agreement was a constructive discharge. (PFF 9, Section 3; PFF 10, Section 5, ¶ 5.) In the Statement of Discrimination that accompanied his ERD Complaint, Poke wrote:

> I was a member of the La Crosse, Wisconsin, Police Department, since 2011. I was one of approximately two African-American officers on the force. In 2015, I was assigned as a Neighborhood Resource Officer (NRO), which was a desirable job for me. I was assigned to the same squad care as Officer Dan Ulrich, who is white.
>
> In 2015, I began to notice a pattern of misconduct on the part of Officer Ulrich, and I became concerned that, if I did not report it, I, myself, might be in serious trouble. So I made an oral report to my direct supervisor (Sgt. Andy Dittman, the acting Sgt. of the Vice Unit and the NRO unit).
>
> As a result of my report, the La Crosse Police Department commenced an investigation of Officer Ulrich, but the Department also commenced an investigation of me. Moreover, I was placed on Administrative Leave while Officer Ulrich was not.
>
> In the spring of 2016, the investigation of me had progressed to a point that it was clear to me the City would be seeking my termination, albeit for some rather petty alleged misconduct. Because I did not believe that there was any chance to preserve my employment and reputation by opposing the City's efforts to fire me through available channels, I authorized my union and my attorney to negotiate for the most favorable terms of resignation they could.
>
> On August 10 and 11, 2016, respectively, the City's representative and I signed an agreement that effected the termination of my employment with the City of La Crosse. I allege that my "voluntary resignation" pursuant to this agreement was a constructive discharge, since I resigned only in order to avoid my certain termination for alleged misconduct.

(PFF 10, Section 5.)

Poke filed a Request to Withdraw Complaint with the Equal Rights Division of the Wisconsin Department of Workforce Development on September 10, 2018. (PFF 11.) Administrative Law Judge Laura J. Amundson, in an Order dated September 20, 2018, dismissed Poke's ERD case with prejudice. (PFF 12.) On October 17, 2018, the United States Equal Employment Opportunity Commission issued to Poke "A Notice of Right to Sue" letter. (PFF 13.)

Plaintiff filed this lawsuit with the United States District Court for the Western District of Wisconsin on January 14, 2019. (Docket No. 1.) In his federal court complaint, Poke alleged the City of La Crosse violated his "right to be free from discrimination in the terms and conditions of employment on the basis of race and color secured … by Title VII of the Civil Rights Act of 1964 when he was placed on leave and relieved of his most significant duties, and then investigated and constructively discharged from his employment." (Docket No. 1, ¶¶ 166, 501.) In addition, Poke claimed Chief Tischer violated rights secured by "the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States to be free from discrimination in employment on the basis of race and color [by placing Poke on administrative leave, relieving him of significant job duties, and by initiating an investigation into his conduct.]" (Docket No. 1, ¶¶ 166, 502.)

Poke also claimed that Chief Tischer violated rights secured "by 42 U.S.C. § 1981 to be free from discrimination in his employment on the basis of race when [Poke was placed on administrative leave, relieved of significant job duties, made the subject of an investigation] and constructively discharged from his employment." (Docket No. 1, ¶¶ 166, 503.)

### DISCOVERY FACTS

In his First Set of Written Discovery, Poke submitted two hundred and seventeen (217) requests for admission to Defendants. (Declaration of Jeff Scott Olsen in Support of Motions to Compel Discovery Responses, Exhibit A – Plaintiff's First Set of Written Discovery Requests dated May 17, 2019 (Olsen Dec., Ex A).)

Defendants' Responses to Plaintiff's First Set of Discovery Requests were sent on June 18, 2019. (Declaration of Jeff Scott Olsen in Support of Motions to Compel Discovery Responses, Exhibit D – Defendants' Responses to Plaintiff's First Set of Written Discovery Request dated June 18, 2019 (Olsen Dec., Ex D).). Defendants' Responses to Plaintiff's First Set of Written Discovery Request were one hundred and twenty three (123) pages in length.

In his Second Set of Written Discovery to Defendants, Poke requested "all emails and other electronic communications to or from any member of the La Crosse police department, human resources office, or Mayor's office, referencing the Plaintiff, from January 1, 2013, through December 31, 2016." (Declaration of Jeff Scott Olsen in Support of Motions to Compel Discovery Responses, Exhibit B – Plaintiff's Second Set of Written Discovery Requests dated May 20, 2019, Request No. 2 (Olsen Dec., Ex B., Request No. 2).) Poke also requested "all emails and other electronic communications to or from any member of the La Crosse police department, human resources office, or Mayor's office, referencing the police officer Anthony Clark, from January 1, 2013, through December 31, 2016." (Olsen Dec., Ex B., Request No. 3.)[2]

Poke's Second Set of Written Discovery Requests to Defendants reads in full as follows:

### INTERROGATORIES

You are requested to respond to the following questions pursuant to Rule 33, Fed. R. Civ. Pro., in writing and under oath, within 30 days of service of this document upon your attorneys.

1.   Please identify the person(s) answering these interrogatories, giving your full name, current address and any other name by which you have been known.

2.   If your response to any of the following requests for admission is anything other than an unqualified admission, please set forth the basis for each denial and identify any and all documents, facts and witnesses that support your response.

### REQUESTS FOR ADMISSIONS

You are requested to respond to the following requests for admissions, pursuant to Rule 36, Fed. R. Civ. Pro. in writing, within 30 days of service of this document upon your attorneys. Please note that pursuant to Rule 36, each of the following statements will be deemed admitted unless, within 30 days after being served, the party to whom a request is directed serves on the requesting party a written answer or objection signed by the

---

[2] Anthony Clark filed a lawsuit, in which he identified the City of La Crosse and the La Crosse Police Department as defendants and alleged race discrimination by both. (Dkt. 11 – Affidavit of Christopher P. Riordan in Support of Defendants' Motion for Protective Order, ¶ 4 (Dkt. 11, ¶ 4).) The City of La Crosse Police Department employed Clark as a police officer from March 28, 2011 until October 28, 2015. (Dkt. 11, ¶¶ 7, 8.)

party or its attorney. Also if you assert lack of knowledge or information as a reason for failing to admit or deny you must state that you have made reasonable inquiry and that the information you know or can readily obtain is insufficient to enable you to admit or deny.

Please admit that:

1.   Each document you have produced in response to the following requests for production of documents, and each document you produced in connection with your initial disclosures, is genuine and authentic.

### REQUESTS FOR PRODUCTION OF DOCUMENTS

You are requested, pursuant to Rule 34, Fed. R. Civ. Pro., to produce the following documents, by sending copies to the undersigned along with your responses to the foregoing interrogatories and requests for admissions.

1.   Please provide all documents which you identified, to which you referred, or upon which you relied, in answering Plaintiff's interrogatories and requests for admission, above.

2.   Please provide all emails and other electronic communications to or from any member of the La Crosse police department, human resources office, or Mayor's office, referencing the Plaintiff, from January 1, 2013, through December 31, 2016.

3.   Please provide all emails and other electronic communications to or from any member of the La Crosse police department, human resources office, or Mayor's office, referencing the police officer Anthony Clark, from January 1, 2013, through December 31, 2016.

(Olsen Dec., Ex B.)

On May 28, 2019, Poke submitted his Third Set of Written Discovery Requests to Defendants. Poke's Third Set of Written Discovery Requests to Defendants reads in full as follows:

### INTERROGATORIES

**INTERROGATORY NO. 1. :**   Please   identify   the   person(s) answering these interrogatories, giving your full name, current address and any other name by which you have been known.

**INTERROGATORY NO. 2. :**   If your response to any of the following requests for admission is anything other than an unqualified admission, please set forth the basis for each denial and identify any and all documents, facts and witnesses that support your response.

**INTERROGATORY NO. 3. :**   Please specify all occasions from January 1, 2011 through December 31, 2016, when the State of Wisconsin

Department of Justice Division of Criminal Investigation was requested to assist with the investigation of suspected wrongdoing by an employee of the La Cross Police Department. For each instance, please specify:

    a. Name or names of suspected employee or employees of the La Crosse Police Department;
    b. Approximate beginning and ending dates of DCI involvement.
    c. Reason for the investigation.
    d. Outcome of the investigation.
    e. Employment status of suspected employee or employees of the La Crosse Police Department after the investigation was concluded and related decisions were made.

**INTERROGATORY NO. 4. :**   At any time from January 1, 2011 through December 31, 2016, was there any rule, policy or practice as to when the participation of the DCI would be requested to assist with the investigation of suspected wrongdoing by an employee of the La Cross Police Department. If so, from when to when was it in effect and what was it?

**INTERROGATORY NO. 5. :**   Please specify all occasions from January 1, 2011 through December 31, 2016, when outside counsel was requested to assist with the investigation of suspected wrongdoing by an employee of the La Cross Police Department. For each instance, please specify:

    a. Name or names of suspected employee or employees of the La Crosse
Police Department;
    b. Name of the outside counsel involved;
    c. Approximate beginning and ending dates of outside counsel involvement.
    d. Reason for the investigation.
    e. Outcome of the investigation.
    f. Employment status of suspected employee or employees of the La Crosse Police Department after the investigation was concluded and related decisions were made.

**INTERROGATORY NO. 6. :**   At any time from January 1, 2011 through December 31, 2016, was there any rule, policy or practice as to when the participation of the outside counsel would be requested to assist with the investigation of suspected wrongdoing by an employee of the La Cross Police Department. If so, from when to when was it in effect and what was it?

**INTERROGATORY NO. 7. :**   Please specify all occasions from January 1, 2011 through December 31, 2016, when an outside investigator was requested to assist with the investigation of suspected wrongdoing by an employee of the La Cross Police Department. For each instance, please specify:

a. Name or names of suspected employee or employees of the La Crosse Police Department;
b. Name of the outside investigator involved;
c. Approximate beginning and ending dates of outside investigator involvement.
d. Reason for the investigation.
e. Outcome of the investigation.
f. Employment status of suspected employee or employees of the La Crosse Police Department after the investigation was concluded and related decisions were made.

**INTERROGATORY NO. 8. :**   At any time from January 1, 2011 through December 31, 2016, was there any rule, policy or practice as to when the participation of an outside investigator would be requested to assist with the investigation of suspected wrongdoing by an employee of the La Cross Police Department. If so, from when to when was it in effect and what was it?

**INTERROGATORY NO. 9. :**   Please specify all occasions from January 1, 2011 through December 31, 2016, when the La Crosse Police Department conducted an internal investigation of alleged, suspected or reported wrongdoing by an employee of the La Cross Police Department. For each instance, please specify:

a. Name or names of suspected employee or employees of the La Crosse Police Department;
b. Approximate beginning and ending dates of internal investigation.
c. Reason for the investigation.
d. Outcome of the investigation.
e. Employment status of suspected employee or employees of the La Crosse Police Department after the investigation was concluded and related decisions were made.

**INTERROGATORY NO. 10. :**   Please identify each instance from 2011 through 2016 when any employee of the La Crosse Police Department has been the subject of a recommendation by the Chief of the Police Department or his delegate for a disciplinary suspension, reduction in rank or termination, and each case where any employee of the La Crosse Police Department voluntarily accepted a suspension, reduction in rank or termination in order to avoid formal disciplinary proceedings, by specifying:

a. Name of employee;
b. Date or approximate date of status change;
c. Nature of conduct upon which decision was based;
d. Personnel involved in investigation, if any; and
e. Nature of status change.

**INTERROGATORY NO. 11. :**   Please identify each employment status change by date and employment status before and after the change from 2011 to the present for the following:

a. Dan Ulrich
b. Scott Delaney
c. Kristine Gasch
d. Dale Gerbig
e. Anthony LaMore
f. Andy Rosenow
g. Michael Nagy
h. Trenton Bowe
i. Chuck Frandsen
j. Troy Nedegaard
k. Corrie Korn
l. Faling Yang
m. Brian Thomson
n. Alan Iverson
o. Steve Pataska
p. Joe Miller
q. James Gegenfurtner

## REQUEST FOR ADMISSIONS

**REQUEST NO. 1.:**   Each document you have produced in response to the following requests for production of documents, and each document you produced in connection with your initial disclosures, is genuine and authentic.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1.:**   Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer Dan Ulrich had told a person he had stopped that he would kill him and rip his heart out. (The subject of this threat may have recorded the incident on his phone, and this request encompasses all audiovisual records as well.)

**REQUEST NO. 2.:**   Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer Dan Ulrich had improperly taken time away from his duties to lift weights.

**REQUEST NO. 3.:**   Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through the present, that La Crosse Police Officer Dan Ulrich has lied under oath in a trial or deposition.

**REQUEST NO. 4.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, of any other alleged misconduct by Officer Dan Ulrich.

**REQUEST NO. 5.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer Scott Delaney had been improperly drinking alcohol or had been improperly under the influence of alcohol while on duty.

**REQUEST NO. 6.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, of any other alleged misconduct by Officer Scott Delaney.

**REQUEST NO. 7.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Department employee Kristine Gasch had improperly taken anything from the evidence room.

**REQUEST NO. 8.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, of any other alleged misconduct by Kristine Gasch.

**REQUEST NO. 9.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer Dale Gerbig had driven a motor vehicle while under the influence of alcohol. In particular, there may be an email that sent to surrounding departments inquiring about hit-and-run incidents after this matter became known to the Chief of Police.

**REQUEST NO. 10.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, of any other alleged misconduct by Dale Gerbig.

**REQUEST NO. 11.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or

corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer Anthony LaMore had engaged in an unauthorized investigation.

**REQUEST NO. 12.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer Anthony LaMore had improperly stopped or detained a person or persons.

**REQUEST NO. 13.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer Anthony LaMore had disobeyed an order or orders.

**REQUEST NO. 14.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, of any other alleged misconduct by Anthony LaMore.

**REQUEST NO. 15.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer Andy Rosenow improperly spent time with his girlfriend while on duty.

**REQUEST NO. 16.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer Andy Rosenow improperly shared information about an ongoing investigation into steroid sales at a local gym.

**REQUEST NO. 17.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, of any other alleged misconduct by La Crosse Police Officer Andy Rosenow.

**REQUEST NO. 18.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Employee Michael Nagy was sleeping

in his work vehicle or was otherwise physically or mentally compromised while on duty. This response should include any citizen call-ins for welfare checks on this officer.

**REQUEST NO. 19.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, of any other alleged misconduct by La Crosse Police employee Michael Nagy.

**REQUEST NO. 20.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer Trenton Bowe used racially inappropriate language.

**REQUEST NO. 21.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer Trenton Bowe neglected the police dog he was charged with caring for as a member of the K-Nine Unit.

**REQUEST NO. 22.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, of any other alleged misconduct by La Crosse Police Officer Trenton Bowe.

**REQUEST NO. 23.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer Chuck Frandsen called another officer a "faggot."

**REQUEST NO. 24.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that led to La Crosse Police Officer Chuck Frandsen's removal as head of the S.W.A.T. Unit.

**REQUEST NO. 25.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011

through 2016, of any other alleged misconduct by La Crosse Police Officer Chuck Frandsen.

**REQUEST NO. 26.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer Troy Nedegaard improperly worked overtime or improperly claimed to have worked overtime.

**REQUEST NO. 27.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, of any other alleged misconduct by La Crosse Police Officer Troy Nedegaard.

**REQUEST NO. 28.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer Corrie Korn violated hunting laws.

**REQUEST NO. 29.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer Corrie Korn used excessive force.

**REQUEST NO. 30.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, of any other alleged misconduct by La Crosse Police Officer Corrie Korn.

**REQUEST NO. 31.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer Faling Yang violated hunting laws.

**REQUEST NO. 32.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, of any other alleged misconduct by La Crosse Police Officer Faling Yang.

**REQUEST NO. 33.:** Please provide copies of all documents, including electronically stored information, relating to the decision to permit La Crosse Police Officer Faling Yang to remain employed by the department after being criminally convicted in federal court.

**REQUEST NO. 34.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police employee Brian Thomson stole from the evidence room.

**REQUEST NO. 35.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, of any other alleged misconduct by La Crosse Police Officer Brian Thomson.

**REQUEST NO. 36.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Sergeant Alan Iverson threatened to kill his family or others.

**REQUEST NO. 37.:** Please provide copies of all documents, including electronically stored information, relating to the termination of La Crosse Police Sergeant Alan Iverson's employment by the city of La Crosse and the resolution of any claims associated therewith.

**REQUEST NO. 38.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, of any other alleged misconduct by La Crosse Police Sergeant Alan Iverson.

**REQUEST NO. 39.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Sergeant Steve Pataska had been unavailable when he was supposed to be on duty. (Officer Jeremy Reindfleish may have complained about this in 2012-2013.)

**REQUEST NO. 40.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011

through 2016, of any other alleged misconduct by La Crosse Police Sergeant Steve Pataska.

**REQUEST NO. 41.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer Joe Miller had used racially inappropriate language.

**REQUEST NO. 42.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, of any other alleged misconduct by La Crosse Police Officer Joe Miller.

**REQUEST NO. 43.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officer James Gegenfurtner had driven while under the influence of alcohol.

**REQUEST NO. 44.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, of any other alleged misconduct by La Crosse Police Officer James Gegenfurtner.

**REQUEST NO. 45.:** Please provide copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016, that La Crosse Police Officers had taken or otherwise interfered with the Plaintiff's property or police clothing or equipment.

(Declaration of Jeff Scott Olsen in Support of Motions to Compel Discovery Responses, Exhibit C – Plaintiff's Third Set of Written Discovery Requests dated May 28, 2019 (Olsen Dec., Ex C).)

On June 18, 2019, Defendants filed a motion for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure along with a brief in support. (Dkts. 9, 10.) Defendants moved the Court for an order to preclude the discovery sought by Poke in his Second Set of Written

Discovery Requests, as the burden, expense and relevance of the proposed discovery was outweighed by the likely benefits.

Assistant Police Chief for the City of La Crosse, Robert Abraham, noted in his June 17, 2019 affidavit that the IT Department for the City of La Crosse Police Department found approximately fifty-seven thousand, four hundred and seventeen (57,417) emails with either the name "Poke" or "Clark." (Dkt. 12, ¶ 3.)

In a June 25, 2019 telephone conversation with counsel for Defendants, Plaintiff's counsel agreed to a postponement of Defendants' response to Plaintiff's Third Set of Written Discovery Requests until a discussion was held with the Information and Technology ("IT") Department for the City of La Crosse Police Department to help narrow the scope of Plaintiff's discovery requests. (Declaration of Christopher P. Riordan, ¶ 3 (Riordan Decl., ¶ 3).) The June 25, 2019 telephone conversation was followed up by a letter to Plaintiff's counsel dated June 26, 2019 confirming the agreement. (Riordan Decl., Ex. A, ¶ 4.) A second letter was sent on June 27, 2019 to Plaintiff's to counsel arrange a conference call with the IT Department for the City of La Crosse Police Department. (Riordan Decl., Ex. B, ¶ 5.)

Counsel for Defendants later informed Plaintiff's counsel in an email dated July 16, 2019 that the person who handled litigation requests for the police department was out until July 29, 2019. (Riordan Decl., Ex. C, ¶ 6.) In his August 1, 2019 reply, Plaintiff's counsel suggested a preliminary production starting with August through September of 2015, instead of 2011 as set forth in Poke's discovery requests. (Riordan Decl., Ex. C, ¶ 6.)

A search was run for documents with references to Anthony Clark, Tony Clark, Clark, Nathan Poke, Nate Poke, and Poke for the period starting August 1, 2015 through September 30,

2015. The results for the search were sent to Plaintiff's counsel in an email dated August 9, 2019. The August 9, 2019 email states:

> Jeff:
>
> I had the IT Director run your most recent request. These are the results:

| Search | Items Found |
|---|---|
| Anthony Clark | 32 |
| Clark | 1870 |
| Nate Poke | 60 |
| Nathan Poke | 95 |
| Poke | 696 |
| Tony Clark | 99 |

> The new search came up with 2,852 documents. I think we still need to narrow the request. I believe we can tell the court we are working on narrowing the parameters of the request and not reached an impasse on discovery.
>
> Chris

(Riordan Decl., Ex. D, ¶ 7.)

Plaintiff's counsel, in an email dated August 12, 2019, refined the preliminary discovery request by eliminating emails that Poke was either a recipient of or a sender. (Riordan Decl., Ex. E, ¶ 8.)

On August 15, 2109, Magistrate Judge Stephen L. Crocker conducted a telephonic hearing with regard to Defendants' Motion for Protective Order. In light of the progress the parties were making concerning discovery issues, the Court denied Defendants' Motion without prejudice. *See* August 15, 2019 Text Order.

A new search was run for documents with references to Anthony Clark, Tony Clark, Clark, Nathan Poke, Nate Poke, and Poke for the period starting August 1, 2015 through September 30, 2015, excluding emails that Poke was either a recipient of or a sender. The results for the search were emailed to Plaintiff's counsel on August 26, 2019. The August 26, 2019 email read:

Jeff:

> I had the IT Director ran the new request and obtained the following results:

| **Search** | **Items Found** |
| --- | --- |
| Anthony Clark | 32 |
| Clark | 1883 |
| Nate Poke | 60 |
| Nathan Poke | 95 |
| Poke | 696 |
| Tony Clark | 99 |

> I will ask if copies can be sent to me for review.

> Chris

(Riordan Decl., Ex. F, ¶ 9.)

A link to a zip file was sent to counsel for Defendants on September 17, 2019, by the IT Director for the City of La Crosse Police Department. (Riordan Decl., ¶ 10.) Over two thousand pages of documents were produced with references to Nathan Poke, Nate Poke, Anthony Clark, and Tony Clark for the period starting August 1, 2015 through September 30, 2015. (Riordan Decl., ¶ 11.)

On December 16, 2019, Plaintiff's counsel was sent a CD with documents that referenced "Nathan Poke" and "Nate Poke" with a date range starting August 1, 2015 through September 30, 2015. (Riordan Decl., ¶ 12.) Plaintiff's counsel was sent a second CD also on December 16, 2019, with documents that referenced "Anthony Clark" and "Tony Clark" with a date range starting August 1, 2015 through September 30, 2015. (Riordan Decl., ¶ 13.)

Along with the review of over two thousand pages of documents with references to Nathan Poke, Nate Poke, Anthony Clark, and Tony Clark, counsel for Defendants was preparing for a trial scheduled for November 4, 2019, which was adjourned a week prior to trial, and preparing for a

trial scheduled for December 2, 2019, which settled during the first week of trial. (Riordan Decl., ¶ 14.)

## STANDARD OF REVIEW

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

In other words, considerations of both relevance and proportionality now expressly govern the scope of discovery. Fed. R. Civ. P. 26(b)(1) advisory committee's note to the 2015 amendment. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment); *see also Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (analyzing the 2015 amendment and concluding the amendment did not change the scope of discovery).

The 2015 amendments to Rule 26, which expressly include the requirement of proportionality, "emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Roberts v. Clark County School Dist.,* 312 F.R.D. 594, 603 (D. Nev. January 11, 2016) (quoting John Roberts, 2015 Year End Report on the Federal Judiciary (Dec. 31, 2015). The fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their discovery requests to the requisites of a case." *Id*.

The burden of demonstrating relevance remains on the party seeking discovery. "A party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case." *Gilead Scis, Inc. v. Merck & Co, Inc.*, No. 5:13-CV-04057-BLF, 2016 WL 146574, at *1 (N.D.Cal. Jan. 13, 2016).

"The Rule 26 proportionality test allows the Court to 'limit discovery if it determines that the burden of the discovery outweighs its benefit.'" *In re IKB Deutsche Industriebank AG*, No. 09 CV 7582, 2010 WL 1526070, at *5 (N.D.Ill. Apr. 8, 2010). District courts have broad discretion to control discovery, including the ability to limit the frequency and extent of discovery when it is unreasonably cumulative or duplicative, the party seeking discovery has had ample opportunity to obtain the information, or the proposed discovery is beyond the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

Under Fed. R. Civ. P. 26(c)(1), upon a showing of good cause, this Court may also issue an order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense," including forbidding discovery or limiting discovery to certain matters. "Subsection (c) [of Rule 26] underscores the extensive control that district courts have over the discovery process, authorizing courts to make 'any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense' (emphasis added)." *United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 369 (9th Cir. 1982).

**ARGUMENT**

In his Third Set of Written Discovery Requests, Poke submitted eleven (11) interrogatories to Defendants. Interrogatory Nos. 3, 5, 7, 9, 10, and 11 of Plaintiff's Third Set of Written Discovery Requests have five (5) subparts, six (6) subparts, six (6) subparts, five (5) subparts, five (5) subparts, and seventeen (17) subparts, respectively. The total number of interrogatories including subparts is fifty-five (55). The number of interrogatories in Plaintiff's Third Set of Written

Discovery Requests violates Federal Rule of Civil Procedure 33. "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33.

Poke, in his Third Set of Written Discovery Requests, also submitted forty-five (45) requests for production of documents. In each request, Poke asked Defendants to produce "copies of all documents, including electronically stored information, relating to any allegation, complaint, report or information, and all investigatory, disciplinary or corrective actions and communications resulting therefrom, from 2011 through 2016" that involved some type of alleged disciplinary action taken against a La Crosse police officer.

In the Discrimination Complaint filed with the Equal Rights Division of the Wisconsin Department of Workforce Development, Poke stated discrimination began on September 11, 2015 and ended August 10, 2016.

| 4. Dates of discrimination (Required; estimate if unsure) | | |
| --- | --- | --- |
| Date the discrimination began?  Mm/dd/yyyy | Date of the most recent discrimination?  Mm/dd/yyyy | |
| September 11, 2015 | August 10, 2016 | *Poke* |

(Dkt. 11, Ex. 2, Section 4.)

Poke now requests documents from 2011, which is four years prior to the start of any alleged discrimination, as identified in Poke's ERD Discrimination Complaint. In addition, the document requests are for disciplinary actions that did not occur between September 11, 2015 and August 10, 2016, in many cases. Standards and procedures for discipline may have been different for those earlier disciplinary actions; therefore, the documents would not be relevant. Further, most of the disciplinary actions listed in Poke's forty-five (45) requests for production are for actions unlike the actions for which Poke was allegedly disciplined. Discipline for actions unlike the actions undertaken by Poke cannot be relevant to the issues in this case.

20

Poke filed a discrimination complaint with the Equal Rights Division of the Wisconsin Department of Workforce Development on December 27, 2016, ERD Case No. CR201604903, and cross-filed the complaint with the U.S. Equal Opportunity Commission, EEOC Case No. 26G201700359C. (PFF 8.) When the ERD and EEOC enter into a work-sharing agreement, the applicable statute of limitations for any claim brought under the Wisconsin Fair Employment Act of Title VII of the Civil Rights Act is 300 days. *See* Wis. Stat. § 111.39(1); 42 U.S.C. § 2000e-5(e)(1). A claim filed outside of this 300 day period is time-barred. *Nat'l R. R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110 (2002).

The United States Supreme Court in *Nat'l R. R. Passenger Corp. v. Morgan* held that "[a] discreet, retaliatory or discriminatory act 'occurred' on the day that it 'happened'. A party, therefore, must file a charge within 180 [EEOC limitations] or 300 days of the date of the act or lose the ability to recover for it." *Nat'l R. R. Passenger Corp. v. Morgan,* 536 U.S. at 110. The Supreme Court went onto explain, "discreet discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely-filed charges." *Id.* at 113.

Poke did not alleged a continuing violation. He alleged the first incident of discrimination occurred on September 11, 2015, and he resigned from the City of La Crosse Police Department on August 10, 2016. As Poke filed his Complaint with the ERD and EEOC on December 27, 2016, March 2, 2016 would predate the filing by 300 days. As such, the relevant time period for any claim against Defendants starts March 2, 2016 and ends when Poke resigned on August 10, 2016. Any request for documents outside the period that starts March 2, 2016 and ends August 10, 2016 cannot be relevant to Plaintiff's claims of discrimination.

"The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. *Vakharia v. Swedish Covenant Hosp.*, 1994

WL 75055 at *2 (N.D. Ill. 1994) (Moran, J.). "Parties are entitled to a reasonable opportunity to investigate the facts-and no more." *Id*. Even before the limitation in Rule 26 that a party may obtain discovery on matters relevant to a claim or defense, the Supreme Court had cautioned that the requirement of Rule 26 that the material sought in discovery be 'relevant' should be firmly applied, and that 'judges should not hesitate to exercise appropriate control over the discovery process.' *Herbert v. Lando*, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). *See also Oppenheimer Fund, Inc.*, 437 U.S. [340,] at 352, 98 S.Ct. 2380 [57 L.Ed.2d 253 91978)].

In contravention to the principles of proportionality and common sense, Poke, in his Second Set of Written Discovery Requests, asked Defendants to produce all emails/electronic communications referencing either Nathan Poke or Anthony Clark for the period starting January 1, 2013 and ending December 31, 2016 – a period that starts two (2) years, eight (8) months, and ten (10) days before September 11, 2015, the first day Poke claimed discrimination. Plaintiff also requests emails and other electronic communications referencing Nathan Poke for a period that includes August 10, 2016 through December 31, 2016 – a period that is approximately four (4) months and twenty (20) days after August 10, 2016, the last day Poke claimed discrimination.

With regard to Anthony Clark, Plaintiff requests emails and other electronic communications referencing Clark for the period that includes January 1, 2013, through December 31, 2016. The City of La Crosse Police Department employed Clark from March 28, 2011 through October 28, 2015. (Dkt. 11, ¶¶ 7, 8.) Plaintiff's document request includes a period that extends one (1) year, two (2) months, and three (3) days passed the date Clark left the department.

Poke requested documents for a period both before and after the alleged discrimination. He has also requested documents for a period of time that is three (3) years, eleven (11) months, and thirty (30) days in length. Poke did not included any other qualifier in his requests that would focus discovery on the allegations made in this lawsuit. As evidenced by the wide breadth of Poke's document requests, he has neither sized nor shaped his discovery to the requisites of a case.

As noted by Assistant Police Chief for the City of La Crosse, Robert Abraham in his June 17, 2019 affidavit, the IT Department for the City of La Crosse Police Department found fifty-seven thousand, four hundred and seventeen (57,417) emails with either the name "Poke" or "Clark." (Dkt. 12, ¶ 3.) To respond to Plaintiff's Second Set of Written Discovery Request, defense counsel must review all fifty-seven thousand, four hundred and seventeen (57,417) emails to determine whether any email includes privileged material or personal information of individuals other than Poke or Clark. A review of this magnitude would involve countless hours of attorney time at an enormous cost to the Defendants.

Plaintiff also claims he is entitled to documents related to internal police investigations. This statement is contrary to Wisconsin Statute § 19.35(1)(am). A police officer is not entitled to inspect records of an internal investigation pertaining to the officer under Wisconsin Statute § 19.35(1) (am), if the factual circumstances reasonably fall within one or more of the statutory exceptions to (am), including if the officer was the subject of an investigation "in connection with a complaint."

## CONCLUSION

The 2015 amendments to Rule 26, which expressly include the requirement of proportionality, "emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Roberts v. Clark County School Dist.,*

312 F.R.D. 594, 603 (D. Nev. January 11, 2016) (quoting John Roberts, 2015 Year End Report on the Federal Judiciary (Dec. 31, 2015).

Courts have noted that a failure to exercise control results in needless and enormous costs to the litigants and to the administration of justice. *Sapia v. Bd. of Educ. of City of Chicago*, 328 F.R.D. 506, 508-09, 2019 WL 166991, at *2 (N.D. Ill. Jan. 11, 2019) citing *Sapia v. Bd. of Educ. of City of Chicago*, NO. 14 C 7946, 2017 WL 2060344, at *2 (N.D. Ill. May 15, 2017).

In this matter, most (if not all) of Plaintiff's discovery is outside the relevant time period. Plaintiff's discovery does not request information concerning his specific allegations of discrimination or information relevant to the type of discrimination Plaintiff has alleged. The breath and amount of discovery requested is unduly burdensome and overtly expense. Further, Poke has failed to demonstrate that the discovery sought is proportional to the needs of the case. As such, Defendants, City of La Crosse and Ronald Tischer, request that the Court deny Plaintiff's Motions to Compel Nos. I, II, and III.

Dated this 23rd day of December, 2019.

s/ Christopher P. Riordan
Christopher P. Riordan
von BRIESEN & ROPER, s.c.
411 East Wisconsin Ave., Suite 1000
Milwaukee, WI  53202
(414) 287-1268  Phone
(414) 276-6281  Fax
criordan@vonbriesen.com

Attorneys for Defendants

34132996_1