IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

NATHAN POKE,

                              Plaintiff,                    OPINION AND ORDER

        v.                                                 19-cv-33-slc

THE CITY OF LA CROSSE, WISCONSIN,
and RON TISCHER,

                              Defendants.

---

Plaintiff Nathan Poke, a former member of the La Crosse, Wisconsin, Police Department, brings this civil damages action against his former employer and its police chief, alleging that they discriminated against him on the basis of his race when they placed him on leave and relieved him of his most significant duties, and then investigated him and constructively discharged him from his employment by forcing him to resign. Poke asserts causes of action under Title VII, the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983, and 42 U.S.C. § 1981. Defendants have moved for partial summary judgment on Poke's claim that he was constructively discharged. Dkt. 20. Because I agree that the circumstances surrounding Poke's resignation do not constitute constructive discharge, I am granting defendants' motion.

Considering the evidence in the light most favorable to Poke, I find the following facts, solely for the purpose of deciding the instant motion:

FACTS

Nathan Poke began as a police officer with the City of La Crosse Police Department on August 23, 2011. At all times relevant to this suit, defendant Ron Tischer served as La Crosse's Chief of Police.

In 2015, Poke applied for and was assigned a job as a Neighborhood Resource Officer. He was assigned to the same squad car as Officer Dan Ulrich, who was white. Soon thereafter, Poke began to notice a pattern of questionable behavior on the part of Officer Ulrich, and he reported this behavior to his direct supervisor, Sgt. Andy Dittman. The La Crosse Police Department commenced an investigation of Officer Ulrich, but also commenced an investigation of Poke. On or about September 11, 2015, Poke was placed on administrative leave, but Officer Ulrich was not. Chief Tischer informed Poke that he was being placed on administrative leave "based on the seriousness of recently reported allegations of multiple policy violations."

In January 2016, Poke contacted the police union and obtained a union lawyer to represent him at an interview by the City's lawyer. The interview took place on January 7, 2016, and lasted several hours. Although the City's lawyer asked Poke some questions about his complaints about Officer Ulrich, most of the questions involved alleged misconduct by Poke.

Around that time, the union lawyer, Andrew Schauer, told Poke that he had learned from the City's lawyer that the City was intent on terminating Poke's employment. Poke and Schauer discussed the likely unfavorable publicity that would result if the Police Chief instituted discharge proceedings before the Police and Fire Commission and how that would hurt Poke's future employability as a police officer, regardless of the outcome of the proceedings. Poke and Attorney Schauer were of the opinion that the Police and Fire Commission would almost certainly support the Chief of Police in a discharge case, even if it was weak. Accordingly, believing there was no chance to preserve his employment and reputation if he went through the disciplinary proceeding, Poke authorized his lawyers to negotiate the terms of his resignation with the City.

On August 10 and 11, 2016, respectively, the City's representative and Poke signed a "Separation Agreement, Waiver and Release" that effectuated the termination of Poke's employment with the City of La Crosse.  Poke agreed to release all legal claims against the City, including any claims for wrongful or retaliatory discharge, but the parties expressly agreed that this would "not bar Employee from pursuing any legal claim alleging race discrimination against the City."[1]

On January 14, 2019, Poke filed this lawsuit, alleging that defendants discriminated against him on the basis of his race when "he was placed on leave and relieved of his most significant duties, and then investigated and constructively discharged from his employment." Complaint, dkt. 1, ¶¶ 501-503.  Poke further alleged that "his resignation pursuant to this [Separation Agreement] was a constructive discharge, since [he] resigned only in order to avoid certain termination for alleged misconduct." *Id*. at ¶ 4142.

OPINION

To be entitled to damages on his claims for race discrimination, Poke must show, among other things, that he suffered an adverse employment action.  *Nacify v. Illinois Dept. of Human Services*, 697 F.3d 504, 509 (7th Cir. 2012); *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000).  Poke alleges four adverse employment actions:  (1) placement on leave; (2) demotion in job duties; (3) being subject to an investigation; and (4) constructive discharge.  A constructive discharge occurs when the plaintiff shows that his working conditions had become

---

[1] As one of their grounds for summary judgment, defendants ask the court to enforce the language in the Separation Agreement barring Poke from bringing any claims against the City for "wrongful or retaliatory discharge."  In response, Poke insists that this language does not apply to his race discrimination claim, which the parties specifically excluded from the broad release.  The court does not need to resolve this dispute because Poke was not constructively discharged.

so intolerable that he was forced to resign. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004). The inquiry is objective, viewed from the standpoint of a reasonable person in the employee's position. *Id*. at 141. Defendants are entitled to summary judgment on Poke's constructive discharge claim if they can show the absence of any genuine dispute of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The Court of Appeals for the Seventh Circuit has recognized two forms of constructive discharge: (1) when a plaintiff resigns due to alleged discriminatory harassment; and (2) when an employer "acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns[.]" *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679–80 (7th Cir. 2010) (quoting *E.E.O.C. v. Univ. of Chicago Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002)). A plaintiff seeking to establish the first form of constructive discharge must show "working conditions even more egregious than that required for a hostile work environment claim because employees are generally expected to remain employed while seeking redress, thereby allowing an employer to address a situation before it causes the employee to quit." *Id*. at 679 (citation omitted). Examples of "egregious" working conditions that go beyond a hostile working environment generally include threats to personal safety. *Chapin*, 621 F.3d at 679 (citing *Porter v. Erie Foods, Int'l, Inc.*, 576 F.3d 629, 640 (7th Cir. 2009) (claim for constructive discharge possible where harassment included repeated use of noose and implied threats of physical violence); *Taylor v. W & S Life Ins. Co.*, 966 F.2d 1188, 1198–99 (7th Cir. 1992) (constructive discharge where supervisor made racial jokes and brandished a firearm, held it to the plaintiff's head, then took a photo and made racial jokes about it at a staff meeting)); *see also Brooms v. Regal Tube Co.*, 881 F.2d 412, 417 (7th Cir. 1989) (finding constructive discharge where the employee's human resource manager repeatedly showed her racist

pornographic photos and made threatening comments to her, including a threat to kill her).
Poke has not presented evidence of conditions that even approach this high threshold.

Instead, Poke appears to be pursuing the second type of constructive discharge claim, *i.e.,*
that his employer acted in a manner so as to have communicated to a reasonable employee that
he will be terminated. However, "only at-will employees can show constructive discharge under
this approach." *Ulrey v. Reichhart*, 941 F.3d 255, 262 n.2 (7th Cir. 2019). Employees like Poke
who enjoy due process protections "cannot assume that the start of termination proceedings will
result in termination" and resign proactively, but must instead let the due process proceeding
play out.[2] *Id*., citing *Cigan v. Chippewa Falls School District*, 388 F.3d 331 (7th Cir. 2004).

*Cigan*, as well as the Seventh Circuit's decisions in *Swearnigen-El v. Cook County Sheriff's
Dept.*, 602 F.3d 852 (7th Cir. 2010), and *Levenstein v. Salafsky*, 414 F.3d 767 (7th Cir. 2005),
defeat Poke's constructive discharge claim. In *Cigan*, 388 F.3d at 332, a teacher retired after the
school superintendent notified her that he would recommend that the school board not renew
her employment after the end of the school year. The Seventh Circuit held that resignation or
retirement merely after one's employer gives "notice of intent to commence a process leading to
discharge" is not a constructive discharge. *Cigan*, at 333-34. The court explained:

> That would take us a long distance indeed from "unendurable
> working conditions" and require courts to engage in speculation.
> Even if, as Cigan contends, this superintendent's earlier
> recommendations had carried the day with the board of education,
> how could a court know the probability that *this* recommendation

---

[2] If the Police Chief had filed disciplinary charges, then Poke would have been entitled to have
the charges reviewed by the city's police and fire commission, which would have had to decide if there was
just cause for the termination. Wis. Stat. § 62.13(5)(em). If the commission sustained the disciplinary
action, then the commission would have been required to make written findings and determinations, §
62.13(5)(f), and Poke could have appealed from the commission's order to the circuit court. Wis. Stat.
§ 62.13(5)(i). *See also Larson v. City of Tomah*, 193 Wis.2d 225, 231-32, 532 N.W.2d 726 (1995) (because
Wisconsin police officers may not be disciplined or discharged without cause, they are not employees-at-
will).

would do so? How, indeed, could a judge or jury be confident that the superintendent would not have changed his mind once Cigan responded to the initial proposal? . . .

The only way to know how matters will turn out is to let the process run its course. Litigation to determine what *would* have happened, had the employee contested the recommendation, is a poor substitute for the actual results of real deliberation within the employer's hierarchy.

*Id*. at 333–34 (emphasis in original).

In *Swearnigen-El*, a corrections officer was suspended with pay pending a discharge hearing for having sex with an inmate, for which he also faced criminal charges.  The corrections officer resigned before the discharge hearing occurred.  The Seventh Circuit held that the corrections officer had not been constructively discharged, stating "'the prospect of being fired at the conclusion of an extended process,' without more, does not constitute a constructive discharge." *Swearnigen-El*, 602 F.3d at 859 (quoting *Cigan*, 388 F.3d at 334).

Finally, in *Levenstein*, the plaintiff was a professor on the faculty of the medical school at the University of Illinois in Rockford.  He was suspended with pay pending a sexual harassment investigation, temporarily assigned off campus for almost a year, removed as department head, and given "demeaning" tasks before finally resigning.  The Court of Appeals ultimately held that "a person who is on leave with pay, with a temporary (though unsatisfying) reassignment pending an investigation of serious job misconduct, who resigns rather than waits for the conclusion of reasonable prescribed due process procedures of the institution, has not from an objective standpoint been constructively discharged."  *Id*. at 775.

Poke's case is no different from these.  As defendants point out, Poke did not face certain discharge because the Police Chief lacked the authority to unilaterally terminate him.  All the

Chief could do was file disciplinary charges with the Police and Fire Commission.  Wis. Stat. § 62.13(5).  Such charges had not even been filed when Poke resigned.  And even if they had, there is no way to know with certainty how things would have turned out, particularly given Poke's suggestion that the disciplinary actions taken against him were payback for him reporting Officer Ulrich's alleged misconduct.  As in *Cigan*, it's possible that the commissioners would have dismissed the charges or imposed discipline short of termination.

Poke attempts to differentiate his case by arguing that the mere filing of disciplinary charges would "would likely be fatal" to his career as a police officer.  Br. in Opp., dkt. 28, at 10.  This argument is unpersuasive for a number of reasons.  First, Poke fails to offer any evidence in support of it, such as affidavits from police chiefs or commissioners or others involved in hiring police officers, who could attest to the consequence of a disciplinary charge on a prospective hire's employment record.  (Quoting from the argument section of defendants' brief does not qualify as evidence.)  Second, the constructive discharge inquiry focuses on the employee's working conditions, not on his future employment prospects.  Finally, plaintiffs Cigan, Swernigen-El, and Levenstein all likely faced the same risk to their careers had they been subject to disciplinary proceedings, yet the Seventh Circuit declined to find constructive discharge.  The Court of Appeals has made clear that although an employee faced with the prospect of a disciplinary hearing is forced to make difficult career choices, these are not the kind of choices that make an otherwise voluntary resignation involuntary.  *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010) (employee's decision to resign and retain full retirement benefits rather than risk unfavorable Merit Board decision did not make resignation involuntary).

In sum, because there is no dispute that Poke short-circuited the disciplinary process and resigned voluntarily, his constructive discharge claim fails as a matter of law.  Accordingly, defendants are entitled to summary judgment on Poke's claim that he suffered an adverse employment action in the form of constructive discharge.

## ORDER

Defendants' motion for partial summary judgment on plaintiff's constructive discharge claim, dkt. 20, is GRANTED.

Entered this 13th day of January, 2020.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge